REYNOLDS TRANSPORTATION COMPANY *v.* PUBLIC SERVICE COMMISSION

(No. 9504)

Submitted April 7, 1943. Decided May 25, 1943.

Lovins, Judge, dissenting.

*Mohler, Peters & Snyder* and *Chas. G. Peters,* for appellant.

*Wilson Anderson* and *B. J. Pettigrew,* for appellees.

Fox, Judge:

The Reynolds Transportation Company, a corporation, hereinafter called "Reynolds", complains of an order of the Public Service Commission entered on the 4th day of February, 1943, by which the Meyer Transit Company, hereinafter called "Meyer", was granted a certificate of convenience and necessity to operate as a common carrier of passengers, express and mail by motor vehicle between Parsons and Elkins, West Virginia, over U. S. Route No. 219. The controversy between Reynolds and Meyer, respecting the right to operate as a common carrier over the route in question, and between the two points mentioned, was before this Court in a somewhat different aspect, and an opinion written thereon. See *Reynolds Transportation Co.* v. *Public Service Commission,* 125 W. Va. 71, 23 S. E. (2d) 53. A proper understanding of the case before us requires some reference to matters leading up to the order complained of.

In 1934 Reynolds Taxicab Company, Inc., predecessor of Reynolds, purchased the assets and property of the Seneca Trails Line, Inc., which included a certificate of convenience and necessity for the transportation of passengers over regular routes between various towns, including Elkins and Parsons. On October 29, 1935, Reynolds entered into an agreement with Meyer under which Meyer was permitted to operate over U. S. Route No. 219 between Parsons and Elkins. On October 2, 1940, Reynolds obtained from the Public Service Commission a certificate to operate as a common carrier by motor vehicle over several designated routes, among them being U. S. Route No. 219 between Parsons and Elkins, and it was noted that service on such last mentioned route was being furnished by Meyer under a lease from Reynolds. On the same date Meyer was given authority to operate as a common carrier of passengers between Elkins and Parsons, under its agreement with Reynolds, until it should be otherwise ordered by the Commission. On February 15, 1941, Reynolds notified Meyer of the cancellation of the agreement between them with respect to the Parsons-Elkins route, such cancellation to be effective as of March 15, 1941. Meyer objected to this cancellation, and the matter being presented to the Public Service Commission, that body, in effect, refused to permit cancellation of this agreement in its entirety, and authorized Meyer to continue the transportation of intrastate passengers and their baggage, picked up at Elkins and points and places on U. S. Route No. 219 between Elkins and Parsons for discharge east of Parsons; and in the transportation of intrastate passengers and their baggage, picked up east of Parsons for discharge at points and places thereon between Parsons and Elkins and including said towns, but not to include passengers whose entire journey was from Elkins to Parsons, or from points between said towns. This ruling was challenged in this Court and we held that "where a lessor of a certificate of convenience and necessity undertakes to terminate a lease agreement, pursuant to the terms

thereof, and seeks consent of the Public Service Commission so to do, and the record shows that the lessor is competent and willing to render satisfactory public service under such certificate, an order of the Commission which grants its consent to terminate but gives to the lessee the right to operate, independently of the lease, as lessor's competitor over a part of the route covered thereby, is erroneous and should be reversed".

On July 22, 1942, and before the final order of this Court in the case referred to above, Meyer applied for a certificate of convenience and necessity to operate motor vehicles for the transportation of passenger, mail and express over U. S. Route No. 219 between Parsons and Elkins. This application was later limited to the extent that what Meyer sought was the same right which the Public Service Commission had accorded to it in the order which had been appealed from and reversed, namely, to operate its motor vehicles over said route, and to carry passengers from Elkins and points between that city and Parsons, if the destination of such passengers was east of Parsons, or, on the converse, carry passengers into Elkins if they had been picked up at points east of Parsons, and limiting the right sought to the extent that no passengers could be transported whose entire trip was between Parsons and Elkins or intermediate points. A hearing on this matter was held in December, 1942. On February 4, 1943, the Commission, in obedience to the mandate of this Court, set aside the order which was involved in the appeal referred to above, and on the same date granted to Meyer a certificate of convenience and necessity to operate as a common carrier between Parsons and Elkins over U. S. Route No. 219, and gave it exactly the same rights and privileges which had formerly been given to it when the matter of the cancellation of the lease was before that body. In other words, what this court held the Public Service Commission could not do, in a contest involving the cancellation of the lease contract between the two carriers, the Commission assumed to, and did, grant to Meyer in the sep-

arate and independent proceeding whereby it regularly applied for a certificate of convenience and necessity to operate over a route already alleged to have been preempted by Reynolds. By reason of this situation Reynolds contends that the Commission refused to recognize the mandate of this Court, and granted to Meyer rights which this Court had formally held it was not entitled to.

We do not agree with this contention. What was before us, on what we will term the former appeal, was not the question of the right of the Public Service Commission to grant a certificate of convenience and necessity over the route in question. What we decided was that Reynolds, having the right to cancel its lease contract with Meyer, the Commission did not have the right to impose a condition upon such cancellation, such as would, more or less, nullify the effect thereof. We did not hold that, independently of the lease agreement between the parties, which was sought to be cancelled, Meyer could not apply for a certificate of convenience and necessity, and that is what has been done in this case. When we decided that the lease agreement between the two carriers could be cancelled unconditionally, Meyer then prosecuted its application seeking substantially the same rights as those accorded it by the Public Service Commission, in the lease cancellation proceeding, and which were later limited to correspond exactly with those granted Meyer by the Commission. While it is true that the record shows that the Commission was of the opinion that the services performed by Meyer between Parsons and Elkins should be continued, and first sought to put into effect its judgment in that respect by imposing conditions upon the cancellation of the lease agreement, and being prevented from so doing, then did exactly the same thing when the situation was presented in a different form, we cannot say that it did not have the right to do so. On the other hand, Reynolds having the right to cancel unconditionally the lease agreement, between it and Meyer, any application for a certificate

of convenience and necessity, filed on the part of Meyer, must rest entirely upon present public needs in the community affected, with due regard to established and existing rights of others,—in this case Reynolds,—and without regard to operations conducted by Meyer under its lease. Aside from its value as evidencing the needs of the community, what Meyer did under its lease agreement, should have no bearing upon whether or not a certificate of convenience and necessity should now be granted to it on the present application.

We think the case must be decided upon a single question, and that is whether the public needs and convenience in the territory served by the two carriers involved in this proceeding, require the granting of the certificate of convenience and necessity to Meyer, to the detriment, and to a certain extent in violation of the rights, of Reynolds over the route between Parsons and Elkins. That the public interests are paramount in matters of this character is, we think, beyond dispute; but the rights of holders of certificates of convenience and necessity, under the settled policy of this State, must not be disregarded. Any doubt arising as to this policy is, we think, resolved by existing statutes, the controlling one of which we quote:

"It shall be unlawful for any common carrier by motor vehicle to operate within this state without first having obtained from the commission a certificate of convenience and necessity. Upon the filing of an application for such certificate and after hearing thereon, if the commission finds from the evidence that the public convenience and necessity require the proposed service or any part thereof, it shall issue the certificate as prayed for, or issue it for the partial exercise only of the privilege sought, and may attach to the exercise of the right granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require, and if the commission shall be of the opinion that the service rendered by any common carrier holding a certificate of

> convenience and necessity over any route or routes in this state is in any respect inadequate or insufficient to meet the public needs, such certificate holder shall be given reasonable time and opportunity to remedy such inadequacy or insufficiency before any certificate shall be granted to an applicant proposing to operate over such route or routes as a common carrier. Before granting a certificate to a common carrier by motor vehicle the commission shall take into consideration existing transportation facilities in the territory for which a certificate is sought, and in case it finds from the evidence that the service furnished by existing transportation facilities is reasonably efficient and adequate, the commission shall not grant such certificate." Sub-section (a), Section 5, Article 2, Chapter 86, Acts of the Legislature, 1939.

Although regulated monopoly, as to private activities charged with a public interest, is, by statutory enactment and court decision, firmly established in our governmental system, in both state and nation, to many the word "monopoly" has a most sinister import, and we still shrink from the application of the principle to particular situations, especially one in which the public highways of the State are involved. The policy of regulated monopoly, is as we understand, based on the theory and argument that the services which public utilities furnish should be supplied at the lowest cost, and in the most efficient manner possible; that the duplication of public service not only adds to the cost thereof, but tends to lower the efficiency of the services rendered; and that the danger to the public of excessive charges, or inefficient services, on the part of those who from lack of competition are in a position to impose them, is, in theory, met by the control exercised by public authorities over rates, charges and services. That monopoly, in the sense used above, is recognized in this State and that it applies to the use of public highways see Sub-section (a), Section 5, Article 2, Chapter 86, Acts of the Legislature, 1939; *Carson* v. *Woodrum*, 95

W. Va. 197, 120 S. E. 512; *Princeton Power Company* v. *Calloway,* 99 W. Va. 157, 128 S. E. 89; *Reynolds* v. *Hudson,* 103 W. Va. 173, 136 S. E. 833; *Quesenberry* v. *Road Commission,* 103 W. Va. 714, 138 S. E. 362; *McKee* v. *Public Service Commission,* 124 W. Va. 10, 18 S. E. (2d) 577; *Reynolds* v. *Public Service Commission,* 125 W. Va. 71, 23 S. E. (2d) 53. In *Carson* v. *Woodrum, supra,* this Court held:

> "The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stage coach or omnibus. The former is the usual and ordinary right of a citizen, a right common to all, while the latter is special, unusual, and extraordinary. As to the former, the extent of the legislative power is that of regulation; but as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature."

This holding, we think, clearly defines the legislative power in respect to the use of public highways by those who use the same for profit, as distinguished from that common use in which all citizens are permitted to participate.

It is clear that the Public Service Commission has the right to grant certificates of convenience and necessity to operate over the State highways, and over routes as to which other certificates of like nature have been granted for the same purpose, in cases where the public needs and necessities so require. We go further and say, that ordinarily an application therefor presents a question of fact, a finding on which this Court will not disturb. We have more than once adhered to this rule. In *Anchor Coal Company* v. *Public Service Commission,* 123 W. Va. 439, 15 S. E. (2d) 406, 411, we said, " * * * we do not interfere, on review, with the action of the Com-

mission, unless it has exceeded the power which it could constitutionally exercise, has gone beyond its statutory powers, or its action is based upon a mistake of law. However, this does not exclude the right to correct a decision of the Commission where it has failed to give consideration to evidence proper to be considered, and failure to consider such evidence may be classified as a mistake of law." In *McKee* v. *Public Service Commission, supra*, referring to the finding of whether public convenience and necessity required a proposed service we said, "A finding on that question involves a factual matter as to which, under many decisions of this Court, the Commission's finding is, in effect, final; and, therefore, the Commission was in a sense given full and complete power to grant or refuse to grant a certificate. Of course, such power must not be exercised in an arbitrary or grossly improper manner, but assuming regular proceedings and proper motives, the power granted to the Commission is well-nigh absolute." We have no disposition to depart from these rulings; but we have a well established public policy, based upon statutory provisions, and decisions of this Court, which have become a part of the law of the land, the recognition of which, we think, interested parties and the public are entitled to have enforced. And when a body such as the Public Service Commission departs therefrom it commits a mistake of law which may be corrected by this Court.

We have here a case where a certificate of convenience and necessity was granted to Reynolds. The evidence shows that it is in a position to provide for the public needs as to transportation between the points in question, Elkins and Parsons. No doubt seems to exist that the public will be adequately served by it. Under our rulings if there should be any dereliction on its part as to efficient service, it could be required, upon notice, to correct its services and make the same conform to the public needs, and only in cases where notice has been given, and an opportunity afforded to correct services complained of, can a certificate be issued to another

carrier. *McKee* v. *Public Service Commission, supra.*
The record tends to show that the route between Parsons
and Elkins can be profitably operated by one carrier, but
doubt seems to exist as to whether it can be so oper-
ated by either of two competing carriers; and if it can-
not be profitably operated by the two, the inevitable re-
sult will be unsatisfactory and inefficient services to the
prejudice of the public. It is suggested that because
Meyer, over a period of one year of its operations under
the lease, carried some 2950 passengers, whose destina-
tion was either east of Parsons or picked up east of Par-
sons and carried into Elkins or points between, shows a
need for the Meyer service. Considering the number of
trips, this amounts to practically one and one-third pas-
sengers for each trip. As to these passengers, if Meyer
is required to stop at Parsons, there may be required
a short wait and a transfer. Every transportation com-
pany must have some terminal, and it is impossible to
furnish through trips for all passengers. Assuming that
convenient waiting rooms are provided at Parsons, we
do not think that this slight public inconvenience, one
which travelers are met with everywhere, justifies the
Commission's order, and there is no other apparent basis
therefor.

It is said that Meyer performs a service which Reynolds
cannot perform, for the reason that its lines stop at Par-
sons, and it can neither transport persons beyond Par-
sons and to the east, or go beyond Parsons and pick up
passengers for transport to Elkins or other points west
of Parsons. This, of course, is true, but if that be an
argument for the proposition that the Meyer service
should be extended into Elkins, why, on the other hand,
should not Reynolds be permitted to extend its opera-
tions to Thomas or points beyond? True, Reynolds has
not applied for this right, but if we grant the same char-
acter of right to Meyer, how could we refuse it as to
Reynolds, should it hereafter apply therefor? Thus would
be laid the foundation for continued raids by one trans-
portation company upon the territory of another, and

we do not think the public service will be promoted by such policy.

In our opinion the Commission was mistaken in its application of statute quoted above, and the decisions of this Court, in the holding, in the circumstances developed by this record, that Meyer was entitled to the certificate granted to it, and the order of the Commission under review is set aside and annulled.

*Reversed.*

LOVINS, JUDGE, dissenting:

The far-reaching, important and erroneous implications which may arise from the conclusion expressed in the majority opinion are the reason for my disagreement.

The power and jurisdiction of this Court to entertain a statutory appeal from an order of the Public Service Commission and to set aside or modify the same are pointed out with clarity and logic in the case of *Gas Company* v. *Public Service Commission,* 73 W. Va. 571, 80 S. E. 931. In that case it was held that the orders of the Commission are final and not subject to judicial review unless " (1) beyond the power which it could constitutionally exercise; or (2) beyond its statutory power; or (3) based upon a mistake of law". We are not concerned with the first two grounds of review, but it is said that the Commission made a mistake of law in granting the certificate to appellee. The finality of a finding of fact by the Commission is well and forcefully set forth in *McKee* v. *Public Service Commission,* 124 W. Va. 10, 18 S. E. 2d 577, and also in the majority opinion. It is therefore unnecessary to advance reasons to substantiate the principle that in most instances a finding of the Commission is final. It would, therefore, follow that such finding cannot be disregarded by this Court, unless there is a concomitant finding that the Commission reached a conclusion by arbitrary and capricious methods. I do not think that the record herein discloses such action on the part of the Commission.

The reason assigned in the majority opinion for setting aside the finding of the Commission is that the Commission failed to make a finding as to the adequacy of service furnished by appellant, Reynolds Transportation Company, under its certificate of convenience and necessity as directed by the latter portion of subsection (a) Section 5, Article 2, Chapter 86, Acts of the Legislature, 1939. An analysis of the foregoing statute leads one to the conclusion that the Legislature was there dealing with competitive rather than supplemental services furnished by motor carriers. In this case Reynolds, the appellant, had a certificate of convenience and necessity for transportation of passengers between the Towns of Elkins and Parsons. The certificate granted to Meyer, the appellee, is limited to the carriage of passengers and baggage where the origin or destination of such carriage is beyond the Town of Parsons. The service rendered by Meyer does not compete with the local service rendered by Reynolds (the appellant) whose right to carry passengers and baggage where the termini of such carriage is Elkins or Parsons, or intermediate points. Owing to the diversity of service covered by the two certificates, the efficiency and adequacy of the service rendered by Reynolds was not in question.

There are other inhibitions which militate against the conclusion of the majority. In entertaining an appeal, it was reasoned in the case of *Gas Co.* v. *Commission, supra,* that the jurisdiction of this Court is derived from the provisions of the Constitution of this State conferring on this Court original jurisdiction in proceedings in mandamus and prohibition. The basis of the relief in a proceeding in mandamus is that the petitioner has been deprived of a right to which he is clearly entitled. Can it be said that the appellant, Reynolds, holding a certificate of convenience and necessity to transport passengers and baggage by motor vehicle between Elkins and Parsons has a clear legal right to transport all passengers between those points? I apprehend that the public convenience is or should be the controlling factor

in resolving that question. Is public convenience subserved by requiring passengers whose journeys originate northeast of the Town of Parsons to alight from the Meyer's vehicles at Parsons and subsequently take Reynolds' vehicles to their destination, when such passengers, with convenience and dispatch, could have completed their journeys on the Meyer's vehicles? Or to reverse the operation, is it conducive to convenience to require a person travelling to a point northeast of Parsons to take passage on a Reynolds' vehicle and alight therefrom at Parsons when he could travel entirely on one vehicle? The foregoing questions provide their own answers. The axiomatic statement is made that transportation systems must have termini. It is also apparent that the fewer changes from vehicle to vehicle in the course of a journey lessen the inconvenience thereof. I think that the Commission acted within its jurisdiction and that the appellee is not entitled, as a matter of law, to monopolize the business of transporting passengers and baggage between the Towns of Elkins and Parsons unless the journey lies entirely between those points, or intermediate point, and I would therefore hold the order of the Public Service Commission entered herein valid.