ATLANTIC GREYHOUND CORPORATION

*v.*

PUBLIC SERVICE COMMISSION OF WEST VIRGINIA,

AND ELK RIVER BUS COMPANY, INC.

(No. 10079)

Submitted January 13, 1949. Decided April 5, 1949.

LOVINS and KENNA, JUDGES, dissenting.

*A. Bliss McCrum, Mohler, Peters & Snyder, Charles G. Peters, Jackson, Kelly, Morrison & Moxley, Robert G. Kelly,* for petitioner.

*Goad & Goad, Sidney E. Goad, E. B. Pennybacker,* for respondents.

HAYMOND, PRESIDENT:

By its petition, filed in this Court on May 4, 1948, Atlantic Greyhound Corporation seeks review under the provisions of Section 1, Article 8, Chapter 50, Acts of the Legislature, 1937, Regular Session, of a final order of the Public Service Commission entered March 24, 1948, in a proceeding in which the applicant, Elk River Bus Company, Inc., by the foregoing order, was granted a certificate of convenience and necessity to operate as a common carrier of passengers between Charleston and Clendenin over U. S. Route 119 and certain secondary roads which lead to or connect with that main highway. The petitioner, Atlantic Greyhound Corporation, as a certified carrier of passengers over U. S. Route 119, which is located on the west side of Elk River and passes through Clendenin, between Charleston and Clarksburg, and other common carriers claiming to be affected, appeared before the commission and protested the application. This Court, by order entered May 17, 1948, fixed June 1, 1948, as the day for hearing upon the petition, and on June 14, 1948, entered an order suspending the order of the commission. By agreement of the petitioner and the defendants the Public Service Commission and Elk River Bus Company, Inc., and with the consent of this Court, final hearing upon the petition was continued until January 12, 1949, at which time this proceeding was finally heard and submitted for decision.

The application of Elk River Bus Company, Inc., dated February 14, 1946, which initiated the proceeding before

the commission, was filed March 12, 1946, and the hearing upon the application was set for March 27, 1946. Atlantic Greyhound Corporation and other carriers affected appeared and opposed the application. The evidence before the commission, consisting of the testimony of numerous witnesses, maps and other documents, was concluded on April 26, 1946. Briefs of counsel were filed on or before June 7, 1946, and the proceeding submitted for decision on or about that date. The commission filed its written report and entered an order on March 24, 1948, by which it found that the service rendered by Atlantic Greyhound Corporation between Charleston and Clendenin was not adequate and efficient and granted, with certain restrictions, the nature of which is hereinafter set forth and discussed, a certificate to Elk River Bus Company, Inc., to operate over U. S. Route 119 between Charleston and Clendenin and over the secondary roads mentioned in the application, subject to acceptance of the certificate by the applicant on or before April 6, 1948. The applicant, on April 6, 1948, accepted the certificate and requested permission to begin its operations within ninety days from that date. On April 2, 1948, the Atlantic Greyhound Corporation filed its verified petition in which it requested a rehearing of the case and that the commission vacate its report and order of March 24, 1948. On April 20, 1948, by order entered on that day, the commission denied the prayer of the petition and refused to grant a rehearing.

Clendenin is located about 22.1 miles northeast of Charleston on U. S. Route 119. At the time of the filing of the application by Elk River Bus Company, Inc., Atlantic Greyhound Corporation was the holder of a certificate of convenience as a common carrier of passengers between Charleston and Clarksburg, and had been operating between those cities over U. S. Route 119 from Charleston to Weston and over U. S. Route 19 from Weston to Clarksburg for a period of approximately twenty years. In conjunction with its lessee, West Virginia Transportation Company, also a certified operator, it was furnishing daily eleven trips from Charleston to Clendenin and thirteen

trips from Clendenin to Charleston, using two, and sometimes three, busses on its scheduled trips. Under its application Elk River Bus Company, Inc., sought authority to operate, without restriction, eighteen round trips daily and nine round trips on Sunday over U. S. Route 119 between Charleston and Clendenin; four round trips daily between Charleston and a point on Jordan Creek Road, a distance of 20.8 miles, of which 18.8 miles are over U. S. Route 119; five round trips between Charleston and Five Mile Fork, a point on Coopers Creek Road, a distance of 13.2 miles, of which 8.6 miles are over U. S. Route 119; four round trips between Charleston and a point on Mink Shoals Hill Road, a distance of 5.4 miles, of which 4.8 miles are over U. S. Route 119; and four round trips between Charleston and a point on Newhouse Branch Road, a distance of 4.5 miles, of which 3.5 miles are over U. S. Route 119. These side roads connect with U. S. Route 119 and respectively extend westward from it for these distances: Newhouse Branch Road, one mile; Mink Shoals Hill Road, six tenths of a mile; Coopers Creek Road, four and six tenths miles and two and two tenths miles on one of its branches; and Jordan Creek Road, two miles. It also sought authority to operate a distance of two and five tenths miles over a side road between Clendenin and Falling Rock known as Falling Rock Road which intersects with U. S. Route 119 on its east side at Clendenin and extends south on the east side of Elk River. The villages on U. S. Route 119 between Charleston and Clendenin, in their order from Charleston, are: Knollwood, Mink Shoals, Elk Hills, Crede, South Big Chimney, North Big Chimney, Little Sandy, Elkview, Blue Creek, Walgrove and Falling Rock. About midway between South Big Chimney and North Big Chimney, Kanawha County Secondary Route 41, known as Coopers Creek Road, intersects with U. S. Route 119 on its west side. The distances on U. S. Route 119 of the various sections between the Charleston terminal of the applicant and Clendenin over which it seeks authority to operate are: Charleston terminal to Newhouse Branch Road, 3.5 miles; Newhouse Branch Road to Mink Shoals Hill Road, 1.3 miles; Mink Shoals Hill Road to

Coopers Creek Road, 3.8 miles; Coopers Creek Road to Jordan Creek Road, 10.2 miles; Jordan Creek Road to Clendenin, 3.3 miles, or a total distance of 22.1 miles.

Sixty eight witnesses were produced in behalf of the applicant and thirty three witnesses were produced in behalf of the protestants, of which number four were bus drivers and three were officials of Atlantic Greyhound Corporation. The witnesses testified with respect to the number of houses located along the various side roads sought to be served, the traffic conditions in the area and the character of the service rendered by the Atlantic Greyhound Corporation between Charleston and Clendenin prior to and during April, 1946. The testimony of witnesses in behalf of the applicant was that there were 276 houses in sight of the side roads over which it desires to operate. The testimony of witnesses in behalf of Atlantic Greyhound Corporation was that the total number of houses on these roads was only 182. Several witnesses testified that the busses operated by Atlantic Greyhound Corporation would not stop for passengers at points between Coopers Creek Road and Newhouse Branch Road and that many of the busses operated between Big Chimney and Charleston were overloaded. Testimony offered in behalf of the applicant was to the effect that Atlantic Greyhound Corporation was not furnishing adequate and efficient service between Charleston and Coopers Creek in not providing sufficient busses to satisfy the demand for service between Charleston and Coopers Creek from four o'clock to six o'clock in the afternoon and between Coopers Creek and Charleston from seven o'clock to nine o'clock in the morning. Representatives of Atlantic Greyhound Corporation testified that its service between Charleston and Clendenin was adequate and efficient and stated that if in the opinion of the commission the service between those points was not adequate and efficient it would furnish such additional service as might be required by the commission.

The evidence introduced in behalf of Atlantic Greyhound Corporation, which was uncontradicted, showed that if the applicant was authorized to operate over any part of U. S.

Route 119, between Charleston and Clendenin, its operation would impair the ability of Atlantic Greyhound Corporation to render service between those points. It also appears that the applicant could not render adequate service over the side roads on a paying basis unless permitted to operate without restriction over U. S. Route 119 between its terminal in Charleston and the intersection of Coopers Creek Road, a distance of eight and six tenths miles, and over U. S. Route 119 between Jordan Creek Road and Clendenin, a distance of three and three tenths miles.

On March 13, 1946, while this proceeding was pending, the commission, in another case involving the application of Troy Taylor for a certificate of convenience and necessity to operate as a common carrier of passengers by motor vehicle between Charleston and Clendenin over U. S. Route 119, which application apparently was protested by Atlantic Greyhound Corporation and was subsequently denied, entered an order stating that the service Atlantic Greyhound Corporation and West Virginia Transportation Company were furnishing between Charleston and Clendenin was not adequate and efficient in that they did not operate a sufficient number of trips or a sufficient number of busses on certain scheduled trips to render the service required. This order, which was made a part of the record in this proceeding, recited that public convenience and necessity required additional bus service between Charleston and Clendenin, specified the requirement of additional round trips leaving Clendenin about ten o'clock A. M. and arriving at Charleston about ten forty five o'clock A. M., and leaving Charleston about three o'clock P. M. and arriving at Clendenin about three forty five o'clock P. M., and directed Atlantic Greyhound Corporation and West Virginia Transportation Company to remedy the designated inadequacy immediately and in any event not later than April 6, 1946. The Atlantic Greyhound Corporation compiled with the order and installed the specifically required service on April 1, 1946, and, at that time, offered to satisfy any additional requirement of the commission. No other or subsequent finding or specifi-

cation of inadequacy or inefficiency of service, however, was made or given by the commission prior to its general statements in the report and the order of March 24, 1948, that the service furnished by Atlantic Greyhound and West Virginia Transportation Company was not adequate and efficient.

By its report and order of March 24, 1948, the commission found, as already stated, that the service furnished by Atlantic Greyhound Corporation and its lessee over certain parts of U. S. Route 119 between Charleston and Clendenin was not adequate and efficient. In the report the commission found against the contention of Atlantic Greyhound Corporation that the issuance of a certificate to the applicant to operate over any part of U. S. Route 119 between Charleston and Clendenin would impair the ability of Atlantic Greyhound Corporation to render service between those points. The report, however, contains the statement that "the only way the applicant can render the needed service on a paying basis over the side roads which it is seeking authority to operate is to permit it to operate over 119 between its terminal in Charleston and the intersection of 119 and Kanawha County Secondary Route No. 41, at or near Big Chimney, and over 119 between its intersection with Kanawha County Secondary Route No. 55 and Clendenin, a distance of three miles, without restriction; otherwise, as Greyhound agrees, the applicant's operation will not be economically feasible." The order of March 24, 1948, granted the applicant authority to operate, without restriction, over the foregoing sections of U. S. Route 119, which are also designated in the record as being between Charleston and Cooper's Creek Road and between Jordan Creek Road and Clendenin, but did not authorize it to operate without restriction over U. S. Route 119 between Coopers Creek Road and Jordan Creek Road, a distance of 10.2 miles. Otherwise stated, the certificate granted to the applicant, over two specified routes designated in the order as "Route No. 1" and "Route No. 2" authorizes it to complete with Atlantic Greyhound Corporation between those points on U. S. Route 119 in trans-

porting passengers on the two routes which extend to and over the variously mentioned side roads which intersect with U. S. Route 119.

The petitioner seeks reversal of the order of March 24, 1948, on these grounds: (1) The finding of the commission in March, 1948, that the service rendered by Atlantic Greyhound Corporation is not adequate and efficient is without evidence to support it as the evidence in the case relates only to the conditions and the service as they existed on and prior to April 26, 1946; (2) the commission is without authority to grant the applicant a certificate to operate as a common carrier over a route served by Atlantic Greyhound Corporation, a certified common carrier, until the commission has found its service inadequate, defined the inadequacy and given it notice and reasonable time and opportunity to remedy the existing inadequacy; (3) the finding of the commission that the grant of a certificate to the applicant to operate without restriction over a part of U. S. Route 119 will not impair the ability of Atlantic Greyhound Corporation to render service between Charleston and Clendenin is not supported by the evidence; and (4) the commission should have granted the petition of Atlantic Greyhound Corporation to rehear the case and vacate its order of March 24, 1948.

A preliminary question not presented by assignment of error or brief of counsel by any party, but which fairly arises upon the record, involves the power of this Court to entertain the petition for review which was not filed until May 4, 1948, which was more than thirty days after the entry of the order of March 24, 1948, but less than thirty days from the entry of the order of April 20, 1948, denying the rehearing. The question was posed in conference by some of the judges of this Court. The jurisdiction of this Court to review an order of the Public Service Commission exists by virtue of the statute, Section 1, Article 8, Chapter 50, Acts of the Legislature, 1937, Regular Session; and if the petition for review was not presented within the statutory period this Court is without

jurisdiction to review the action of the commission in this proceeding. As the question is jurisdictional in character it will be considered and determined by this Court on its own motion. *Blosser v. State Compensation Commissioner,* 132 W. Va. 112, 51 S.E. 2d 71; *Whited v. State Compensation Commissioner,* 131 W. Va. 646, 49 S.E. 2d 838; *Gapp v. Gapp,* 126 W. Va. 847, 30, S.E. 2d 530; *Morris v. Gates,* 124 W. Va. 275, 20 S.E. 2d 118; *Dawson v. Dawson,* 123 W. Va. 380, 15 S.E. 2d 156; *Charleston Apartments Corporation v. Appalachian Electric Power Company,* 118 W. Va. 694, 192 S.E. 294; *Arnold v. Mylius,* 87 W. Va. 727, 105 S.E. 920; *Buskirk v. Ragland,* 65 W. Va. 749, 65 S.E. 101; *Thompson v. Adams,* 60 W. Va. 463, 55 S.E. 668; *Cresap v. Kemble,* 26 W. Va. 603; *Kemble v. Cresap,* 26 W. Va. 603.

The Public Service Commission has been denominated by this Court as "an administrative board of statutory origin, possessing quasi judicial and legislative powers." *United Fuel Gas Company v. Public Service Commission,* 73 W. Va. 571, 80 S.E. 931; *City of Bluefield v. Public Service Commission,* 94 W. Va. 334, 118 S.E. 542; *Village of Bridgeport, Ohio v. Public Service Commission,* 125 W. Va. 342, 24 S.E. 2d 285. A tribunal of that type may be given, by statute or valid regulation, the power to rehear a proceeding of which it has jurisdiction, 42 Am. Jur., Public Administrative Law, 170; and an appellate court may adopt reasonable rules regulating the right to a rehearing. See 3 Am. Jur., Appeal and Error, Section 797. "A general rule governing all administrative tribunals in all situations in regard to their power to reconsider or modify their own decisions is not practicable. There has been applied to them the general rule governing courts, and some cases hold that the rule denying the power of modification to inferior courts is inapplicable to administrative tribunals. On the other hand, it is often held that administrative tribunals, in the absence of statute, have no power to reconsider, grant a rehearing on, or set aside, their final determinations. The power of administrative authorities to reconsider or modify their own determina-

tions may exist by reason of express provision of statute, or its existence may be inferred from a statutory provision. Lacking this, whether the power exists depends upon an interpretation of the entire statute and policy applicable to the particular administrative agency. Administrative determinations are subject to reconsideration and change where they have not passed beyond the control of the administrative authorities, as where the determinations are not final, but interlocutory, or where the powers and jurisdiction of the administrative authorities are continuing in nature. While a proceeding is pending before a tribunal, there is no limit to the power of such tribunal to review any rulings it may have made, or to permit a reargument upon any proposition involved. When the jurisdiction of the administrative body has terminated, there is no longer any power to reconsider or change the determination. Some courts have denied that an administrative tribunal has power to change its own decisions where the statute provides for judicial review of the decisions, while others have sustained the power even pending proceedings for judicial review." 42 Am. Jur., Public Administrative Law, Section 174. In *Lane v. United States*, 241 U. S. 201, 36 S. Ct. 599, 60 L. ed. 956, in dealing with the right of an administrative agency to review its previous order on the ground of newly discovered evidence or fraud while the property to which the order relates is under administrative control, the Supreme Court of the United States said that such right is "of the very essence of administrative authority". Though no statutory provision, in express terms, confers authority upon the commission to grant a rehearing, the statute which creates the commission and a subsequent related act provided generally and without specific limitation, that the commission may prescribe rules of practice and procedure, the method and the manner of holding hearings, and for taking evidence on all matters that may come before it, and enter such orders as may be just and lawful. Code, 1931, 24-1-7; Section 5, Paragraph (a), Article 5, Chapter 86, Acts of the Legislature, 1939, Regular Session. The language of the later statute is that the commission may "Prescribe rules of

practice and procedure, the method and manner of holding hearings, and for taking evidence on all matters that may come before it, and enter such orders as may be just and lawful." By virtue of this provision of the statute a valid rule of the commission authorizes rehearing of a proceeding upon petition, duly verified, filed within ten days after final decision in the case. Paragraph (a), Rule 19, Rules of Practice and Procedure of the Public Service Commission, effective October 1, 1940.

Denial of the authority of the commission to rehear a matter of which it has jurisdiction, in view of its power to prescribe rules of practice and procedure conferred by Code, 1931, 24-1-7, and Section 5, Paragraph (a), Article 5, Chapter 86, Acts of the Legislature, 1939, Regular Session, would disrupt the orderly discharge of the duties and the functions which the Legislature, by the enactment of statutes, has required it to perform, produce confusion and uncertainty, and add to the number and the frequency of unnecessary appeals. Unless legally necessary, a conclusion which produces those results should not be adopted. In the absence of any limitation or precept of law which requires disavowal of that right, and it seems that there is none, the power of the commission to rehear a proceeding of which it has and retains jurisdiction will be recognized and its effective operation sustained and upheld. The power of the commission to grant a rehearing is, by inference, recognized by this Court in its statement in the opinion in *Poccardi v. Public Service Commission*, 75 W. Va. 542, 84 S.E. 242, L. R. A. 1916 A, 299, that "although an informal rehearing seems to have been allowed, no new evidence of consequence was filed."

In this case the verified petition of Atlantic Greyhound Corporation for a rehearing of the final order of March 24, 1948, was filed within the ten day period on April 2, 1948, and, of course, within the time allowed by the statute in which to present a petition for review to this Court, which is thirty days after the entry of a final order. Section 1, Article 8, Chapter 50, Acts of the Legislature, 1937,

Regular Session. The petition for rehearing was denied by the commission on April 20, 1948.

In *North Carolina Utilities Commission v. Norfolk Southern Railway Co.,* 224 N. C. 762, 32 S.E. 2d 346, which held that the State Utilities Commission was not authorized to grant a rehearing except in the manner prescribed by the statute of that State, the Court, in discussing the effect of the filing of a petition for that purpose upon the period allowed for an appeal from the original order, uses this language: "* * * where a petition for rehearing is filed before the time for appeal has expired, it tolls the running of the time and appeal may be taken within the statutory time for appeal from the date of denial of the petition for rehearing. *Morse v. United States,* 270 U. S. 151; 70 Law Ed. 518; *United States v. Seminole Nation,* 299 U. S. 417, 81 Law Ed. 316."

In *Straley v. Payne,* 43 W. Va. 185, 27 S.E. 359, this Court, in determining the effect of a motion for a new trial of a case before a justice of the peace, made after the entry of judgment, upon the statutory period of ten days in which to apply for a writ of *certiorari* to the circuit court, held that the ten day period began to run from the time of the denial of the motion and not from the time of the entry of the judgment. In the opinion Judge Brannon, speaking for this Court, said: "The first point made by the plaintiffs in error is that the writ of *certiorari* was sued out later than ten days from the date of the judgment. The verdict was returned on the 11th day of June, and on that day the justice entered judgment on it. On the next day the defendant asked a new trial, and the justice overruled his motion. Shall we commence counting the ten days' limiting a writ of *certiorari* from the 11th or the 12th of June? First, let us look at our statute law. Section 114, chapter 50, Code 1891, provides that in specific cases judgment shall be entered without delay after the trial, but that in other cases judgment shall be entered within twenty-four hours after the trial. Section 91 gives the party twenty-four hours after the return of a verdict to move for a new trial.

It might be said, under these provisions, that judgment ought not to be entered until the expiration of the twenty-four hours; but it can be plausibly said that, when there is such motion for a new trial, the date of the judgment, for the purposes of appeal, is after final action on it. It requires a final judgment to warrant an appeal or *certiorari*. Till then the matter has not passed from the power of the court. I think the law, outside of any statute, is properly stated in Elliott, App. Proc. §119, to the effect that the right of appeal, as a general rule, dates from the time that a complete judgment is rendered and recorded, and that where a motion in arrest, or a venire *de novo*, or for a new trial, remains undisposed of, there is no right of appeal, and where the court decides to reconsider its judgment the right of appeal dates from the ultimate judgment, and, on the same principle, that where there is a pending motion for a new trial the right of appeal does not mature until there is a ruling denying the motion. I would say that, if the party enters such motion, he could not appeal until it was decided against him; and that would seem to be mutually operative on both sides, and to be a test decisive of the question. 2 Enc. Pl. & Prac. 137; *Railroad Co. v. Doane,* 105 Ind. 93, (4 N. E. 419).

"In *Brockett v. Brockett,* 2 How. (U.S.) 238, it was held that a petition filed for a rehearing during the term, and entertained by the court, suspended the decree until it was disposed of, and that an appeal dates from the order denying the rehearing. So, in *Memphis v. Brown,* 94 U. S. 715: 'It is the uniform practice in this State to enter judgment at once, in the Circuit Court, upon the verdict of a jury or a finding of the Court. For many purposes the judgment is a final judgment, from the date of its entry. Questions of interest and limitation are determined by that date, yet the right of appeal does not exist until a motion for a new trial, if filed, is finally overruled, and may be then exercised, although this is done at a subsequent term. As long as the county court treated this matter as still pending before it, the respondent had no right to assume that its judgment was final. When it finally disposed of the matter,

he could exercise his right of appeal, even though its former determination was in the nature of a final judgment. *Boggs v. Caldwell Co.,* 28 Mo. 586, leaves no doubt on that point.' *Lakeman v. Railroad Co.,* 36 Mo. App. 362; *Ex parte Lowe,* 20 Ala. 330. So the *certiorari* was taken in time, as time does not commence to run against it until the 12th day of June, and it was sued out on the 22d."

In *Brockett v. Brockett,* 2 Howard 238, 11 L. ed. 251, mentioned in the above quotation from the opinion in *Straley v. Payne,* 43 W. Va. 185, 27 S.E. 359, a final decree was entered by the trial court on May 10, 1843. A petition to reopen was filed during the same term, entertained by the court, and referred to a master. On June 9, 1843, upon the report of the master, the court refused the petition to reopen. The period in which to appeal was ten days from the entry of the final decree. The appeal was taken on June 15, 1843, after the expiration of the ten day period. In denying a motion to dismiss the appeal, the Supreme Court of the United States, in an opinion by Mr. Justice Story, said: "Now, the argument is, that as the original final decree was rendered more than one month before the appeal, it could not operate under the laws of the United States as a *supersedeas,* or to stay execution on the decree; because to have such an effect the appeal should be made and the bond should be given within ten days after the final decree. But the short and conclusive answer to this objection is, that the final decree of the 10th of May was suspended by the subsequent action of the court; and it did not take effect until the 9th of June, and that the appeal was duly taken and the appeal bond given within ten days from this last period."

As a general rule, when a rehearing is granted, the status of the case is the same as though no hearing had occurred. 3 Am. Jur., Appeal and Error, Section 810. "At common law an order granting a rehearing operates as a reversal of the original decisior ' 4 C. J. 641. See also *Hook v. Mercantile Trust Company,* 95 Fed. 41, 36 C. C. A.

645. Though the filing of a petition for a rehearing does not vacate or annul a judgment, it suspends the judgment from the date of the filing of the petition. The granting of a rehearing withdraws an opinion previously rendered and destroys its force and effect unless it is subsequently adopted by the same tribunal. 3 Am. Jur., Appeal and Error, Sections 809 and 811.

The principles recognized and adhered to by the authorities quoted from and cited in the preceding paragraphs, though in some instances considered with respect to a rehearing by a judicial tribunal, determine the effect upon the thirty day period fixed by the statute within which to petition this Court for a review of a final order of the commission, when, within the respective periods provided for a rehearing by the commission and for a review by this Court, a petition for a rehearing is filed and subsequently denied. While the petition was pending before the commission the ultimate finality of the order of March 24, 1948, was undetermined. If the commission had granted the rehearing under its rule authorized by the statute, as it could have done, no right of review by this Court would have existed in the petitioner. It is also manifest that if, during the thirty day period and while the petition for a rehearing was pending and undisposed of, this Court upon petition had granted a review, and thereafter a rehearing had been ordered by the commission, the proceeding for review would of necessity have become futile and ineffective and subject to dismissal as moot or improvident. The same principle is necessarily operative if the petition for a rehearing is denied for the controlling reason that until it is disposed of the finality of the order of which a rehearing is sought remains wholly undetermined and inconclusive. The statute, properly considered and applied, permits the filing of a petition in this Court for a review of a final order of the commission within thirty days from the time of the refusal by the commission to rehear it. To the contention that this application of the statute defeats its purpose in providing a period of thirty days in which to apply for a review by this Court, and

permits delay by repeated attempts to obtain a rehearing, the complete answer is that only one such application may be entertained and that it must be made within a fixed and limited time. At most, the time required for the denial of a rehearing can not exceed the period of ten days within which the application must be made and such additional time, usually a short period, as may be necessary to enable the commission to consider and refuse it. Whatever may be the comparatively short time of these combined periods, no possible harm or prejudice can ordinarily result from an unsuccessful effort to obtain a rehearing of any final order of the commission. It follows that this Court has jurisdiction, by virtue of the statute, to review the order of the commission entered March 24, 1948, upon the petition presented to this Court on May 4, 1948, and within thirty days from the entry of the order denying the rehearing on April 20, 1948.

The evidence upon which the commission based its finding that the service furnished by Atlantic Greyhound Corporation and West Virginia Transportation Company over certain parts of U. S. Route 119 between Charleston and Clendenin was inadequate and inefficient related to the situation which existed at and shortly prior to April 26, 1946, the time at which the evidence was concluded. The uncontradicted testimony of witnesses is that the traffic conditions were abnormal and changeable and were then undergoing continuous change which would extend into the future. In consequence the finding of inadequate and inefficient service at the time it was made in March, 1948, is without the support of evidence. Though an order of the commission based upon evidence to support it is not subject to judicial interference upon review by this Court, *Town of Harrisville v. Public Service Commission,* 103 W. Va. 526, 138 S.E. 99; *City of Huntington v. Public Service Commission,* 101 W. Va. 378, 133 S.E. 144; *Baltimore and Ohio Railroad Company v. Public Service Commission,* 99 W. Va. 670, 130 S.E. 131, the clear inference necessarily to be drawn from these, and other like decisions, is that an order of the commission entered upon a

finding which is contrary to the evidence or is not supported by evidence will be set aside. See *Baltimore and Ohio Railroad Company v. Public Service Commission,* 81 W. Va. 457, 94 S.E. 545, L.R.A. 1918D, 268, in which this Court said: "When the order of a commission is based upon facts establishing injustice, sustained by evidence, or found from conflicting evidence, it cannot be disturbed, because the courts will not review the findings as to the facts. But, if the facts are undisputed and the reason and justice of the case is clear and plain, an order made in contravention thereof has no foundation in law, and is not beyond the power of judicial abrogation." As the finding of inadequate and inefficient service in March, 1948, is wholly without evidence upon which to base it, the order which rests upon it must be reversed and set aside.

As heretofore pointed out, this proceeding was concluded before the commission and submitted for its decision in June, 1946, upon evidence of conditions material to the decision as they existed shortly prior to that time. The commission made no finding and rendered no decision in the case until March 24, 1948, when the final order complained of was entered. No sufficient reason for this unusual and prolonged delay of more than twenty one months in deciding the case appears anywhere in the record of this proceeding. As to this phase of the matter, it is pertinent here to repeat the admonition of this Court in *Village of Bridgeport, Ohio v. Public Service Commission,* 125 W. Va. 342, 24 S.E. 2d 285, which is in these words: "In discharging the functions required by the statute of its creation and subsequent related acts, the Public Service Commission is dealing with instrumentalities that certainly affect the public interest and welfare in many vital ways, and we believe it is quite apparent, even though the legislative purposes are not expressed in its enactment relating to the Commission's duties, that the expeditious and prompt exercise of its powers is a necessarily implied requirement. The Commission is an administrative body whose duties demand the exercise of quasi judicial functions. It has no arbitrary discretion, so that

its powers are not to be exercised in a manner that is controlled by what, in its judgment, the expediency of the situation with which it is confronted requires."

At least one baneful consequence of this unreasonable delay in the decision of the proceeding, which could have been avoided by prompt action, without alluding to others that readily suggest themselves but need not be mentioned, is the foregoing erroneous finding which this Court is impelled to vacate and set aside.

The statute, Section 5, Paragraph (a), Article 2, Chapter 86, Acts of the Legislature, 1939, Regular Session, expressly provides that "* * * If the commission shall be of the opinion that the service rendered by any common carrier holding a certificate of convenience and necessity over any route or routes in this state is in any respect inadequate or insufficient to meet the public needs, such certificate holder shall be given reasonable time and opportunity to remedy such inadequacy or insufficiency before any certificate shall be granted to an applicant proposing to operate over such route or routes as a common carrier." The requirement of reasonable time and opportunity to remedy any inadequacy or insufficiency of the service of a certified operator is mandatory and must be satisfied by the commission before it can grant a certificate to an applicant to operate over the same route as a common carrier. It is extremely doubtful if the order of the commission in the *Troy Taylor* case, a separate proceeding from the case now under review, which specified the inadequacy of the service of Atlantic Greyhound Corporation and West Virginia Transportation Company, as determined by it on March 13, 1946, complied with the requirement of the statute, a question which need not now be determined; but even if that order may be so considered, its command was executed and the inadequacy of the service specified in it was promptly remedied well before the expiration of the time allowed for that purpose, and no subsequent notice of the existence of any inadequacy or insufficiency of the service rendered by Atlantic Grey-

hound Corporation was given or communicated to it until the report of the commission was filed and its order entered on March 24, 1948. The manner in which the commission acted in this respect necessarily afforded no time or opportunity whatsoever to Atlantic Greyhound Corporation to remedy the inadequacy or the insufficiency of the service which, in the opinion of the commission, then existed. In so acting the commission failed to comply with the clear mandate of the statute and, in consequence, it was without lawful authority to grant, as it undertook to do by its order of March 24, 1948, a certificate of convenience and necessity to the applicant to operate over any part of the route for which Atlantic Greyhound Corporation held a prior certificate. Tested by the quoted statutory provision and the decisions of this Court as to its meaning and effect, the order was beyond the statutory power of the commission to enter it and was based upon a mistake of law. For those reasons it must be set aside and annulled by this Court. *Reynolds Transportation Company v. Public Service Commission,* 125 W. Va. 690, 26 S.E. 2d 519; *Anchor Coal Company v. Public Service Commission,* 123 W. Va. 439, 15 S.E. 2d 406; *United Fuel Gas Company v. Public Service Commission,* 103 W. Va. 306, 138 S.E. 388, 52 A. L. R. 1104; *United Fuel Gas Company v. Public Service Commission,* 73 W. Va. 571, 80 S.E. 931. See *McKee v. Public Service Commission,* 124 W. Va. 10, 18 S.E. 2d 577.

The findings of the commission that permission to the applicant to operate over any part of U. S. Route 119 between Charleston and Clendenin would not impair the ability of Atlantic Greyhound Corporation to render service between those points, that the only way the applicant could render the needed service on a paying basis over the side roads in question would be to permit it to operate, without restriction, over U. S. Route 119 between Charleston and Coopers Creek Road and between Jordan Creek Road and Clendenin, and to operate otherwise would not be economically feasible, are in apparent conflict. Obviously, if the applicant must take the passengers which now

use the busses operated between Charleston and Coopers Creek Road and between Jordan Creek Road and Clendenin in in order to operate on a successful and paying basis, it is difficult to understand how the loss of this traffic would not adversely affect the revenue of Atlantic Greyhound Corporation and also impair its ability to render adequate service. The undisputed evidence is that the operation by the applicant without restriction over any part of U. S. Route 119 between Charleston and Clendenin would impair the ability of Atlantic Greyhound Corporation to render needed service, and the adverse finding of the commission on that issue is both contrary to the evidence in the case and without any support in the evidence. In consequence, this finding of the commission can not stand and it must be vacated and set aside.

In view of the conclusion reached with respect to the issues dealt with and disposed of in the preceding portions of this opinion, the action of the commission in refusing to grant a rehearing and to vacate its order of March 24, 1948, was erroneous. An order of the commission based upon findings of fact which are not supported by evidence or based upon a mistaken view of law, upon petition of an aggrieved party, should be set aside and the proceeding in which it was entered should be reopened and reheard.

The final order entered March 24, 1948, should be reversed and set aside and this proceeding remanded to the commission with directions to rehear and decide the case in the manner required by law and in conformity to the principles enunciated in this opinion; and it is so ordered.

*Reversed and remanded with directions.*

LOVINS, JUDGE, dissenting:

I respectfully dissent from the decision of the Court in this case. The reasons for such dissent are as follows:

Jurisdiction to review a final order of the public service commission is conferred on this Court by Chapter 50,

Article 8, Section 1, Acts of the Legislature, 1937, but before such jurisdiction may be exercised a written petition must be presented to this Court, or a judge thereof in vacation, "within thirty days after the entry of" such final order. In the instant case jurisdiction of this Court to review a final order of the public service commission depends upon the power of the commission to grant a rehearing, in that, the final order was entered by the commission on March 24, 1948, and application for a rehearing was filed by the Atlantic Greyhound Corporation on April 2, 1948, which was denied by the commission on April 20, 1948. The petition for this appeal was filed on May 4, 1948.

The public service commission of this State is an administrative body created by an Act of the Legislature, and has limited legislative and *quasi* judicial powers derived wholly from statute. *Bluefield v. Commission,* 94 W. Va. 334, 340, 118 S.E. 542. None of the enactments conferring jurisdiction and power on the commission makes any reference to the power of said commission to grant a rehearing in a proceeding once disposed of by final order.

In *Reynolds v. Alexandria Motor Bus Line* (Va.), 126 S.E. 201, 205, the Supreme Court of Appeals of Virginia, in discussing the powers of the State Corporation Commission of that State, whose powers and functions include those exercised by the public service commission of this State, held: "The right to a rehearing of a final judgment is not a common-law right, and exists only by virtue of statute." It is noteworthy that in the *Reynolds* case, the Virginia Court was considering a governmental body whose powers were conferred by the Constitution of that State, and include such essentially judicial powers as those of entering money judgments. Section 155, *et seq.,* Article XII, Constitution of Virginia, 1902. In this jurisdiction the public service commission is not a body specifically authorized by the Constitution, and exercises no such judicial powers as those conferred on the State Corporation Commission of Virginia.

Regulatory bodies, similar to the public service commission of this State, have no power to grant rehearings, in the absence of statute, conferring such power on them. *North Carolina Utilities Comm. v. Norfolk So. Ry. Co.*, 32 S.E. 2d 346.

The Court's opinion seems to be based on the provisions of Code, 24-1-7, and Chapter 86, Article 5, Section 5, paragraph a, Acts of the Legislature, 1939, conferring upon the public service commission of this State the power to make rules of practice and procedure. I do not think those statutes confer on the commission the important power to grant a rehearing.

The effect of the Court's opinion is to permit the commission, by entertaining a petition for a rehearing, to extend the thirty-day period for an appeal, provided for by Chapter 50. Article 8, Section 1, Acts of the Legislature, 1937. Thus, the opinion of the Court in the instant case opens the way for the public service commission of this State to change a solemn enactment of the Legislature by promulgating a rule of procedure providing for rehearings. In my opinion the Court has granted to the public service commission a power which the legislature did not see fit to delegate to it.

I am in accord with the holding in the opinion of the Court that the filing of a petition for rehearing with a court or a commission having power to grant such a rehearing tolls the running of the time within which an appeal may be taken until final disposition of the rehearing. *Morse v. United States*, 270 U. S. 151, 46 S. Ct. 241, 70 L. ed. 518. See *Straley v. Payne*, 43 W. Va. 185, 27 S.E. 359; *Saginaw Broadcasting Co. v. Federal C. Com'n.*, 96 F. 2d 554, 558. But in this case, as hereinbefore stated, the public service commission lacks power to grant a rehearing, and, therefore, the petition for an appeal considered by this Court came too late. The appeal granted herein should have been dismissed as improvidently awarded.

The record in this proceeding, in my opinion, does not present a question of granting a certificate of necessity and convenience covering roads or territories already served by a certificated common carrier by motor vehicle, as was true in the cases of *McKee v. Public Service Comm.*, 124 W. Va. 10, 18 S.E. 2d 577, and *Transportation Co. v. Commission*, 125 W. Va. 690, 26 S.E. 2d 519. Although the commission, in its report filed in this proceeding as well as in the statement filed with this Court, adverted to the inadequacy of the service of the Atlantic Greyhound Corporation over thirteen and one-half miles of Route No. 119, I think such reason has no place in this proceeding.

It is firmly established by statute and judicial decisions that a certificate of necessity and convenience cannot be granted to a competing carrier until the holder of an existing certificate is given a reasonable opportunity to remedy inadequate and insufficient service. But this proceeding presents a different question, which is controlling.

It is manifest that the public service commission, in granting a certificate of public necessity and convenience to Elk River Bus Company over thirteen and one-half miles of Route No. 119, was moved by the fact that it would not be profitable to operate a passenger motor carrier line over the side roads without also granting the right to operate over portions of Route No. 119 between Clendenin and Charleston. I think that the certificate granted to Elk River Bus Company is only incidentally competitive with the existing certificate, when it is considered that the existing certificated route extends from Charleston to Clarksburg, a distance of approximately one hundred and sixty miles, and that approximately three and one-half miles from the mouth of Jordan's Creek to Clendenin and approximately ten miles from the mouth of Cooper's Creek to Charleston, are but small portions thereof. It requires credulousness for one to conclude that granting a certificate covering thirteen and one-half miles would have any serious effect on the income derived from the one hundred sixty-mile certificated route.

The people of this State are now engaged in the construction of a statewide system of roads, for which a considerable amount of public money has been expended. I think the public service commission should not be precluded from granting the use of such parts of that system to carriers of passengers by motor vehicle, when public necessity and convenience require such use.

The effect of the holding of the Court in this instance is to deny a number of persons, living on the side roads, transportation by motor bus in order to uphold an admitted monopolistic certificate covering only the main road. The side roads and the main road, constructed by public authority and paid for by public funds, should be used in such manner as to advance the interests of the people. I do not think the Legislature intended the result reached by this Court herein, nor do I think it coincides with the best interests of the people of this State.

It seems to me that the holding of this Court has permitted a monopolistic certificate of necessity and convenience, held by Atlantic Greyhound Corporation, to be interposed as a barrier to the accomplishment and furtherance of a progressive and beneficial public policy, thus depriving the people living on the side roads of an opportunity to employ the roads on which they live for the purposes intended. In other words, I think that a benevolent and legal monopoly, intended to promote the public convenience, has been distorted in this instance, so as to override such convenience.

For the foregoing reasons, I would: first, dismiss the appeal as improvidently awarded; and, second, if considered on its merits, I would affirm the final order of the public service commission.

I am authorized to say that Judge Kenna joins in this dissent.