GRAY LINE TOURS OF SOUTHERN NEVADA (FORMERLY TANNER MOTOR TOURS OF NEVADA, LTD.), A NEVADA CORPORATION, APPELLANT, v. THE PUBLIC SERVICE COMMISSION OF NEVADA; NOEL A. CLARK, CHAIRMAN, EVO A. GRANATA AND HEBER HARDY, AS MEMBERS OF SAID COMMISSION; AND LAS VEGAS-TONOPAH-RENO STAGELINE, INC., A NEVADA CORPORATION, RESPONDENTS.

No. 11214

April 8, 1981                                    626 P.2d 263

*Beckley, Singleton, DeLanoy & Jemison,* Las Vegas, for Appellant.

*Richard H. Bryan,* Attorney General; *Hampton M. Young, Jr.,* Deputy Attorney General, Carson City; *Smith & Gamble,* Carson City; *R. Y. Schureman,* Los Angeles, for Respondents.

## OPINION

*Per Curiam:*

In 1969, 1971 and 1972, Respondent Las Vegas-Tonopah-Reno Stageline, Inc. (LTR) filed applications with the Nevada Public Service Commission (PSC) to expand its services. One of the requested expansions was a proposal to carry passengers to and from McCarran Airport in competition with appellant Gray Line Tours of Southern Nevada (Grayline).

Public hearings on the applications were held by the PSC in September and November of 1972 during which Grayline was given full opportunity to be heard and present evidence as to why LTR's application should be denied. Four years later, on September 30, 1976, an opinion and compliance order were issued by the PSC granting LTR a certificate of public convenience and necessity to operate to and from McCarran Airport.

In its accompanying opinion the PSC stated that although LTR had circumvented the law by providing unauthorized service, "the public has had the benefit of such operations and should not be deprived of this needed service." The PSC also found, under NRS 706.391, that LTR was "fit, willing, and able" to perform the requested services, that extended service would be in the public interest and that "protestants (including Grayline) will not be unreasonably affected by the authority granted herein."

Grayline sought judicial review of the PSC ruling in a complaint filed October 22, 1976 urging that the PSC order and certificate be set aside. The complaint raises many issues, three of which have been presented in this appeal.

These issues are:

1. Whether the PSC must find existing services to be inadequate before it can authorize competing service.

2. Whether the PSC order, which was issued in 1976 and based on evidence of conditions presented in 1972, was founded on any relevant evidence.

3. Whether Grayline's due process rights were violated solely on the basis of the PSC's having taken four years to issue its decision.

1. *Inadequacy of Existing Service as a Prerequisite to Granting a Certificate.* There are no Nevada decisions on this point. NRS 706.391(2) states:

Before granting a certificate of public convenience and necessity to an applicant, the commission shall take into consideration:

(a) Other authorized transportation facilities in the territory for which a certificate is sought;

(b) The public necessity and convenience to be accorded by the service offered by such applicant; and

(c) Whether the applicant is fit, willing and able to perform the services . . . and whether the proposed operation will be consistent with the legislative policy set forth in NRS 706.151.

The portion of NRS 706.151 which is relevant to this issue states that it is the purpose of the Legislature to promote adequate and efficient service without unfair or destructive competitive practices. NRS 706.151(1)(c).

Grayline argues that a showing of the inadequacy of existing service is a prerequisite to the granting of a certificate. The applicable statutes, quoted above, do not support this position. The PSC correctly considered the impact that authorizing LTR to serve the airport would have and found that Grayline would not be unreasonably affected. This is all that it was required by law to do.

The language of NRS 706.151(1)(c) is almost identical to that contained in the National Transportation Policy which prefaces the Interstate Commerce Act, 49 USC. In Trans-American Van Service, Inc. v. U.S., 421 F.Supp. 308 at 320-321 (1976), the Court stated:

A showing of inadequacy of existing service is neither indispensible [sic] for, nor a condition precedent to, a grant of authority (citations omitted). It is to be given no more weight than any other element (citation). To hold otherwise would be to vest the carriers with a property right to protection from competition, a notion which has been specifically rejected.

In arguing that, as a previously authorized carrier, it should have been entitled to a "preferential opportunity" to satisfy existing service requirements, Grayline relies on three PSC decisions. Two of these, CPC A-2059 and CPC A-2052, were decided in 1967, and one, Ray & Ross Transport, was decided in 1979, three years after this case. CPC A-2059 contains a gratuitous statement that "reasonable service is all that can be required," but the case was decided on other grounds. CPC A-2052 reiterates this statement and continues, "the existence of such reasonable service can preclude a satisfactory showing of public convenience and necessity."

In the most recent PSC case, Ray & Ross Transport, the Commission found that "Applicant has failed to carry its burden of proving that public convenience and necessity would be

served by authorizing applicant to provide tours to areas already covered." The Commission continued, however, that it had also considered the other factors contained in NRS 706.391. In Ray & Ross Transport, LTR and Grayline successfully intervened, and the applicant was denied a certificate, not because it was found that certification of the applicant would result in destructive competition, but because the Commission was not convinced of his "fitness and ability" to perform the requested services.

None of the above three cases indicates that the PSC has unequivocally interpreted NRS 706.391(2) as requiring that public convenience and necessity cannot be shown if an existing carrier is providing reasonable service. In any case, administrative agencies are not bound by the doctrine of *stare decisis,* Northern Pacific Railway Co. v. U.S., 41 F.Supp. 439 (D.Minn. 1941).

Grayline admits that the PSC is not bound by the doctrine of *stare decisis,* but argues that under NRS 233B.125[1] the PSC *was* required to give an explanation for its "change in policy." In the first place, as stated above, it is not clear that the decision in this case was, in fact, a change in policy. Further, although the findings and conclusions of the PSC are not separately stated, they are quite thorough and are preceded by a nineteen page review of testimony and discussion which adequately displays the Commission's reasoning "in sufficient detail to permit judicial review." *See* State Department of Commerce v. Hyt, 96 Nev. 494, 611 P.2d 1096 (1980).

2. *Sufficiency of Evidential Support for Public Service Commission Order.* The district court admitted that it could have nullified the PSC's order on the basis of the state of the record, citing Atlantic Greyhound Corp. v. PSC, 54 S.E.2d 169 (W.Va. 1949). However, it also noted that Grayline failed to present any evidence, either to the PSC or the court, of changed circumstances and stated:

> In any event, because of the long passage of time and the abuse and negligence of all parties in disposing of this action, it would be incorrect to dismiss it now. Everyone has waited too long as it is for some disposition. To further delay, forcing the parties to refile and relitigate this

[1]NRS 233B.125. A decision or order adverse to a party in a contested case shall be in writing and stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact and decisions shall be based on substantial evidence. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. . . .

entire matter would work to everyone's disadvantage, especially the public's (citations).

In Bowman Transportation, Inc. v. Arkansas Best Freight System, Inc., 419 U.S. 281, 294-296 (1974), the Court commented on the five years it took the ICC to issue a decision, stating that since there was no indication that if the record was reopened it would not once again become stale, the court would decline to require a remand, because there had been no showing of "exceptional circumstances."

Presumably, the only change in circumstances between the time of the hearing and the decision was an increase in tourism and population in Las Vegas, a factor which could be detrimental to Grayline's position that there was no need for additional service.

3. *Due Process.* The district court in its memorandum of decision criticized the PSC for taking four years to decide this case, stating it was a "completely unwarranted abuse of power and dereliction of duty." Still, this does not support Grayline's contention that it was denied due process. In its own briefs, Grayline has been unable to cite any authority for the proposition that the "requirements of fair and open hearings" includes a requirement that administrative agencies produce decisions within a reasonable time. Grayline merely argues again that the order was based on no relevant evidence and therefore violated the due process clause. Since none of the parties adequately complied with NRAP 28(a)(3) in that they did not support their contentions with references to the record, which is well over 1200 pages in length, the district court's findings that "Plaintiffs did not challenge the factual basis for the PSC decision and failed to present substantial evidence that the PSC legally erred in issuing its decision . . ." should stand.

It is hard to read this record without sharing some of the misgivings expressed by the trial judge in this case, but we decline to make further comment. Holding, as we do, that a showing of inadequacy of service is not a prerequisite to the granting of another certificate in the area, that the trial court's findings and order are supported by substantial evidence and that there is no denial of due process arising, per se, from the long delay, we are compelled to affirm the ruling of the trial court.

Affirmed.

GUNDERSON, C. J., and MANOUKIAN, SPRINGER, and MOWBRAY, JJ., and ZENOFF, SR. J.,[2] concur.

---

[2]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in this case in the place of THE HONORABLE CAMERON BATJER, Justice, who was disqualified. Nev. Const. art. 6 § 19; SCR 10.