EDWARD McKEE AND JOHN McDONALD, *etc. v.* PUBLIC
SERVICE COMMISSION *et al.*

(No. 9258)

Submitted January 14, 1942.  Decided February 3, 1942.

KENNA, JUDGE, dissenting.

*Emory Tyler* and *R. A. Welch,* for petitioners.
*David G. Lilly, Jr.,* for respondent.

FOX, PRESIDENT:

This appeal involves the correctness of an order of the Public Service Commission, entered on the 27th day of June, 1941, granting to Neil F. Whiteman, doing business as City Cab, a certificate of convenience and necessity to operate two motor vehicles, as a common carrier of passengers in taxicab service, from a stand in the City of Keyser.

On July 23, 1940, Whiteman, hereinafter referred to as "applicant," filed his application for a certificate of convenience and necessity "to operate on call of the public over an irregular route to and from Keyser to all points in West Virginia and will operate from a stand in Keyser." At the time of the filing of this application, Edward McKee and John·McDonald, doing business as Mac's Taxi, hereinafter referred to in the singular as "protestant," operated a taxicab service in the City of Keyser under a certificate of convenience and necessity granted by the Public Service Commission, by which, as held by the Commission, it was authorized to operate from a stand in the City of Keyser in serving certain territory, and not over any particular route or routes, and thereafter filed two protests against the issuance of a certificate to Whiteman, and in one of such protests averred that the service

provided by it under its certificate was efficient and adequate, offered to furnish additional service as the public needs might require, and asked an opportunity to furnish such additional service as the Commission might deem necessary. Hearings were held upon the application, and the protests, and on June 27, 1941, a final order was entered, from which we quote the following:

> "The evidence adduced by the applicant shows that the taxi-cab service rendered by the protestants in the City of Keyser is not efficient and adequate nor satisfactory to a substantial number of inhabitants of said city * * *; that convenience and necessity requires the service the applicant proposes to render; and that the protestants, under the certificate of convenience and necessity held by them, are authorized to operate from a stand in the City of Keyser in serving certain territory, not to operate over any particular route or routes.
>
> "Upon consideration whereof, the Commission is of the opinion and finds that the taxi-cab service furnished by the protestants in the City of Keyser is not reasonably efficient and adequate; that the protestants, having been given the opportunity and having failed in their duty to the public, should not be given further opportunity to remedy such inadequacy; and that the applicant, Neil F. Whiteman, doing business as City Cab, should be issued a certificate of convenience and necessity to operate not more than two taxi-cabs in said City of Keyser.
>
> "It is, therefore, ordered that the applicant, Neil F. Whiteman, doing business as City Cab, be, and he hereby is, issued a certificate of convenience and necessity, designated P. S. C. M. C. Certificate No. 873, to operate two motor vehicles as a common carrier of passengers and taxi-cab service from a stand in the City of Keyser, Mineral County."

No question is here raised by the protestant as to the finding of the Commission as to the efficiency and adequacy of the service rendered by it, apparently conceding that the factual finding of the Commission on that point

is conclusive on that issue. The principal, if not only, question raised is the failure of the Commission to point out and define the nature of the inefficiency and inadequacy of such service, and to give it reasonable opportunity to remedy the same, before any certificate could be issued to the applicant herein. Protestant relies, in support of its position, on subsection (a), section 5, article 2, chapter 86, Acts of the Legislature, 1939, reading as follows:

> "(a) It shall be unlawful for any common carrier by motor vehicle to operate within this state without first having obtained from the commission a certificate of convenience and necessity. Upon the filing of an application for such certificate and after hearing thereon, if the commission finds from the evidence that the public convenience and necessity require the proposed service or any part thereof, it shall issue the certificate as prayed for, or issue it for the partial exercise only of the privilege sought, and may attach to the exercise of the right granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require, and if the commission shall be of the opinion that the service rendered by any common carrier holding a certificate of convenience and necessity over any route or routes in this state is in any respect inadequate or insufficient to meet the public needs, such certificate holder shall be given reasonable time and opportunity to remedy such inadequacy or insufficiency before any certificate shall be granted to an applicant proposing to operate over such route or routes as a common carrier. Before granting a certificate to a common carrier by motor vehicle the commission shall take into consideration existing transportation facilities in the territory for which a certificate is sought, and in case it finds from the evidence that the service furnished by existing transportation facilities is reasonably efficient and adequate, the commission shall not grant such certificate."

Subsection (b) of section 5, confers upon the Commission the power to prescribe rules and regulations for the en-

forcement of its provisions; subsection (c) provides that no certificate issued in accordance with the terms of the Act shall be construed either to be a franchise or irrevocable, or to confer any property right upon the holder; and by section (d) it is provided that the Commission may at any time, for good cause, suspend, and, upon not less than fifteen days' notice to the grantee of any certificate and an opportunity to be heard, revoke or amend the same.

It is obvious that the decision of this case rests upon the interpretation we give to this statute. Concededly, a taxicab is a common carrier, and comes within the provisions of the subsection quoted above. The vital point is whether the holder of a certificate to operate a taxicab service is entitled to an opportunity to remedy any inadequacy or insufficiency in service found to exist, before a like certificate can be issued covering the same territory. Protestant strongly insists that it is entitled to such opportunity, and that same was not afforded; while the applicant contends that a taxicab which operates within a territory rather than over a route or routes, regular or irregular, does not come within the provisions of the statute which require such opportunity to be given, and that the same only applies to common carriers operating over a route or routes.

It will be observed that the first part of subsection (a) provides that upon the filing of an application for a certificate of convenience and necessity, and after a hearing is had thereon, if the Commission finds from the evidence that the public convenience and necessity require the proposed service, or any part thereof, it shall issue the certificate as prayed for, or issue it for the partial exercise only of the privilege sought, and may attach to the exercise of the right granted such terms and conditions as in the judgment of the Commission will serve the public convenience and necessity. That provision, of course, applies to all character of common carriers, whether operating on a route or in a territory. Thus far the only test is whether or not public convenience and necessity require the proposed service. A finding on that

question involves a factual matter as to which, under many decisions of this Court, the Commission's finding is, in effect, final; and, therefore, the Commission was in a sense given full and complete power to grant or refuse to grant a certificate. Of course, such power must not be exercised in an arbitrary or grossly improper manner, but assuming regular proceedings and proper motives, the power granted to the Commission is well-nigh absolute. This being so, the legislature apparently desired to throw around those operating under existing certificates some protection against unfair and unreasonable competition and, as we view the matter, made a distinction between the two classes of common carriers covered by the statute, namely, those operating over routes and those operating over highways in a territory. In the very nature of things, certain common carriers operate over established routes, such as bus lines carrying passengers, and in some instances freight lines; while others, such as taxicabs, operate from particular stands over all highways in a given territory, which may or may not be circumscribed by the certificate under which they operate. With this idea in mind, the legislature clearly provided that as to any common carrier holding a certificate of convenience or necessity over any route or routes in this State, where there was a finding that its service was inadequate or insufficient to meet public needs, it should be given reasonable time and opportunity to remedy such inadequacy and insufficiency before a certificate to operate over said route or routes should be granted to another. That, being a limitation upon the legislative grant of power, should not be construed to extend beyond the usual and ordinary meaning of the language employed, and following this method of construction, it seems clear that only common carriers over route or routes are given this particular form of protection. Apparently it was thought that other types of common carriers should likewise have protection against unreasonable and unnecessary competition, and there was put in the section a provision that before granting any certificate the Commission should take into consideration existing transportation facilities in

the territory for which the same was sought, and that in case it should find that the service furnished by existing transportation facilities was reasonably efficient and adequate, such certificate should not be granted; the converse following, as a matter of course, that if the service furnished by existing certificate holders was not reasonably efficient and adequate a new certificate might be granted, on the theory that the public convenience and necessity so required. This, we think, is the interpretation which should be given to the statute. Therefore, the protestant, not holding a certificate of convenience and necessity to operate over a route, regular or irregular but only over a territory, was not entitled to an opportunity to remedy any inefficiency or inadequacy existing at the time of the Commission's order granting such certificate to the applicant, and the Commission, upon its finding that existing service in the Keyser territory was not reasonably adequate and efficient, was free to grant a certificate to the applicant.

But it may be said that the applicant asked for a certificate of convenience and necessity over an irregular route; that the Commission treated this application as one intended to cover an irregular route; and treated the certificate of convenience and necessity held by the protestant as covering a route or routes, and, therefore, it was entitled to an opportunity to remedy its service. There is force and reason in this suggestion. As stated above, the applicant did apply for a certificate to operate over irregular routes within the State of West Virginia, from a stand in the City of Keyser. The Commission evidently treated the certificate of the protestant as one entitled to be protected under the statute in the way of being given an opportunity to remedy and improve its service and thereby ward off competition. This theory was followed throughout the hearing, and the final order of the Commission seems to recognize that the protestant was originally entitled to such opportunity, because it states that having been given such opportunity, and having neglected its duty to the public, was not entitled to further opportunity to remedy such service. Clearly the Commission was in

error when, under the circumstances of this case, it held that the protestant had been given such an opportunity to remedy its services as the statute contemplates. No such opportunity was ever given them. True, there is much evidence to show that the service rendered by them was inadequate to meet the public needs of the community, but the protestant contended that its service was adequate and there was evidence to sustain that claim. Only after the Commission decided that the service was inadequate was the protestant placed under a duty to improve its service on pain of having competition develop through the granting of a certificate to another. The opportunity which the statute contemplates a common carrier must have to remedy inadequate or insufficient service, is an opportunity subsequent to the date when there is a proper finding of such inadequacy or insufficiency. Furthermore, administrative law must be administered within the framework of legal principles which have governed the courts of the land from time immemorial, and one of those principles, and an outstanding one, is that before one can be held to the consequences of a breach of duty, that duty must be first alleged, and its breach defined. The order of the Public Service Commission did not define, in any way, the steps necessary to be taken to remedy the service involved, and we have no doubt but that in a case coming within the provisions of the statute requiring that opportunity to remedy service be given, there must be a reasonable definition of the inadequacy and insufficiency and the steps required to be taken to remedy the same, and that this opportunity must be given after insufficiency and inadequacy are determined by proper authorities, in this case the Commission. Otherwise, the statute would be palpably unfair in its application, because no common carrier would know what it was expected to do to satisfy what the Commission had in mind in declaring the services to be inadequate or insufficient.

We think the Commission misconceived the law governing this case. It now contends, in support of its order, that it was not required to give to the protestant an op-

portunity to remedy its service. This is inconsistent with the entire proceedings, including the final order. Had it proceeded upon the theory for which it now contends, it would have held that the service provided by the protestant was insufficient and inadequate, and granted the certificate to the applicant upon the theory that public necessity and convenience so required. That is what we think it should have done.

The Commission reached the right result, and even though the proceeding was heard upon what we conceive to be a misconception of the law governing the case, and therefore we do not deem it necessary or advisable to reverse its order merely because such result was reached by an irregular route. As we view the matter, no good purpose would be served by remanding the case, either for a new application, or to permit an amendment to that on file, and a reading of the testimony already taken, with presumably the same result in the end. Notwithstanding the application filed asked for a certificate to operate over an irregular route, the Commission was not called upon to grant that application, because the statute provides that it may issue it for the partial exercise of the privileges sought. This it did when it impliedly refused permission to operate over an irregular route, and granted such certificate to operate from a stand in the City of Keyser without any reference to territory or route.

The order of the Public Service Commission is affirmed.

*Affirmed.*

KENNA, JUDGE, dissenting:

I am in entire agreement with the construction of Acts 1939, 86-2-5a, discussed in the majority opinion, but I am of the opinion that the Commission committed what should be regarded as a fatal procedural error in treating both the application and the protest as though the matter under consideration was service upon either a regular or an irregular route, carrying that method of procedure into its final order by a recital that the protestant

had been given the opportunity to remedy the inadequacy of its service and had breached its duty to the public by failing to do so. I agree that on the basis of the testimony in this record they reached a correct conclusion, but the subject matter of the hearing appears to have been entirely incongruous with that of the application, the protest and the Commission's orders. It seems to me that it is only indulging in surmise to conclude that in a properly conducted investigation the proof and outcome would have been the same. The Commission, of course, is not bound by the technical rules of pleading and procedure, but at the same time it should not depart entirely from the designated route. Neither is it necessary for the parties before the Commission to appear and plead with common law nicety.

In this matter their inquiry should be as to the service of the territory around Keyser and their record should at least show nothing to the contrary, as I think it now does. I think the Commission's order should be set aside and the case sent back with direction to reopen with leave to amend both the application and the protest and to take further proof, if that is desired by either the applicant or the protestant, and for a finding not based upon the non-performance of its public duty on the part of Mac's, but upon the requirement of additional taxi service in the Keyser area.

If Mac's Taxi has actually "failed in their duty to the public," which the Commission's order indicates is the basis of its finding, the interests of the public, which it is the duty of the Commission assiduously to guard, demand more than the issuance of another certificate for the same territory. *Mewha* v. *Public Service Commission*, 122 W. Va. 305, 309, 9 S. E. 2d 868, 870.