RAILWAY EXPRESS AGENCY, INCORPORATED
RE: APPLICATION FOR COMMON CARRIER CERTIFICATE
BETWEEN PORTLAND AND ROCKLAND, MAINE.
X-4457

Kennebec.   Opinion, April 27, 1961.

*William H. Marx,*
*R. E. Johnson,* for Railway Express.

*Raymond Jensen,*
*Roland Rice,* for Trucking Co.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

TAPLEY, J.   On exceptions.   The petitioner, Railway Express Agency, Inc., by application to the Public Utilities

Commission, seeks authority to provide a substitute motor for rail service for the handling of express traffic which formerly was served by trains 52, 55, 56 and 57 of the Maine Central Railroad. Trains 52 and 57 were discontinued January 17, 1959 and trains 55 and 56 were to be discontinued April 4, 1959. (When the petition was brought the petitioner had knowledge of the proposed discontinuance as of April 4, 1959 and, as a matter of public knowledge, it is noted that trains 55 and 56 are now no longer in service.) Congdon Transportation, B & E Motor Express, Inc., Arthur Fish, Fox & Ginn, Inc., Boston & Rockland Transportation Co., Lincoln's Express, Inc., Emile Thibault and the Maine Motor Rate Bureau were permitted to intervene in opposition to the application. These intervenors, with the exception of Maine Motor Rate Bureau, are motor common carriers operating under certificates of public convenience and necessity issued by the Public Utilities Commission authorizing service to some or all of the points involved in these proceedings. The Railway Express Agency, Inc., according to its application, desires to operate its own motor vehicles as a common carrier between Portland and Rockland, Maine and intermediate points to serve the same area which it has been doing by rail transportation. The Public Utilities Commission, by majority vote, found:

"***** We find that the present and future public convenience and necessity require operation by Applicant as a common carrier by motor vehicle for transporting freight or merchandise for hire, moving in express service in intrastate commerce between Portland and Rockland, Maine passing through and serving intermediate points of Yarmouth Junction (Yarmouth), Freeport, Brunswick, Bath, Wiscasset, Newcastle, Damariscotta, Waldoboro and Warren, subject to such conditions as we in the future may find it necessary to impose in order to restrict Applicant's operations to express service; that Applicant is fit, willing and able properly to perform such service and to conform to

the requirements of Maine law and our rules and regulations thereunder; that a certificate authorizing such operation should be granted as hereinafter conditioned, and that the application in all other respects should be denied."

Based on the findings, the following decree was issued:

"1. That Railway Express Agency, Inc. be, and it hereby is, authorized to operate motor vehicles over the public highways as a common carrier transporting freight and merchandise for hire between its agencies or stations in Portland, Maine and Rockland, Maine serving its agencies or stations in Yarmouth Junction (Yarmouth), Freeport, Brunswick, Bath, Wiscasset, Newcastle, Damariscotta, Waldoboro and Warren, subject to the following terms and conditions.

2. The service to be performed is limited to service which is auxiliary to or supplemental of Railway or air express service.

3. Shipments transported shall be limited to those moving on a through bill of lading or express receipt.

4. Such further specific conditions as we in the future may find it necessary to impose in order to restrict the operation herein authorized to service which is auxiliary to or supplemental of Railway or air express service."

The intervenors object to the decision of the Public Utilities Commission, as evidenced by the exceptions. There are actually seven exceptions but due to an error in numbering there appears to be eight.

*Exception 1* is general in its application, contending that the ruling, order, judgment and decree of the Commission are not supported by any substantial evidence and are predicated on erroneous applications of law.

*Exception 2* is taken to the finding of the Commission that "The issue is whether public convenience and necessity re-

quires the continuation of this intrastate express service at the points involved by the use of motor vehicles in lieu of rail service." The intervenors say that this finding is in error as it misstates the issue and reveals a basic misconception of the nature of the case.

*Exception 3* proposes that the majority finding of the Commission that Sec. 25 of Chap. 48, R. S. 1954 is the section governing the procedure rather than Sec. 20 of the same chapter is erroneous.

*Exception 4* presents the contention that if the Commission was correct in determining that the application of the petitioner was governed by the provisions of Sec. 25 then it was in error in finding that the petitioner had proved public convenience and necessity to service the Portland to Rockland route intrastate as provided by the provisions of Sec. 25.

*Exception 5* attacks the finding, "Its (petitioner) express service primarily involves the expedited transportation of small shipments at generally higher rates from, to and between the considered points." by ignoring certain evidence in making the finding and failing to limit the decree to the kind of service it found that the petitioner rendered.

*Exception 6 (7)*. The intervenors complain by this exception that the Commission found public convenience and necessity without applying any standards in arriving at the decision.

*Exception 7 (8)*. Intervenors say that when the Commission admitted petitioner's exhibits 8, 9 and 10 they committed errors of law.

The intervenors argue that the majority of the Commission is in error by finding that petitioner's allegation is governed by Sec. 25. They contend that the facts of this case do not come within the meaning and intent of Sec. 25 as

the applicant has not been the physical carrier and now proposes the creation of a new service by inaugurating its own motor vehicle transportation and, therefore, must be governed by the provisions of Sec. 20. Pertinent portions of Secs. 25 and 20 read as follows:

"**Sec. 25.** Applications may be filed with the commission by railroads, electric railways, railway express or water common carriers asking its approval of operation by motor vehicles over the highways by or in connection with the service of such carriers, where highway transportation has been substituted by or for such carrier prior to January 1, 1935, for transportation service previously performed by such carrier or is to be substituted for transportation now performed by or for any such carrier. Hearings shall be ordered by the commission on every such application and notice thereof shall be given in such manner and to such persons, firms and corporations as the commission deems necessary at least 7 days prior to the date fixed therefor. If, after such hearing, the commission shall find that the operation is a service which regularly has been performed by or for such carrier prior to and since January 1, 1935, it shall grant a certificate of public convenience and necessity as a matter of right, and in cases where such service regularly has been performed by or for any such carrier prior to January 1, 1935, the service lawfully may be continued pending the issuance of such a certificate, provided application for such a certificate is filed with the commission within 15 days after July 6, 1935; but if such service has not been regularly performed prior to and since January 1, 1935 such a certificate shall be issued only if the commission shall find that the public convenience and necessity require and permit such operation."

"**Sec. 20.** No person, corporation, partnership, railroad, street railway or other transportation company shall operate, or cause to be operated, any motor vehicle or vehicles not running on rails

> or tracks upon any public way in the business of
> transporting freight or merchandise for hire as
> a common carrier over regular routes between
> points within this state without having obtained
> from the commission a certificate declaring that
> public necessity and convenience require and per-
> mit such operation. - - - - - - - - - In determining
> whether or not such a certificate shall be granted,
> the commission shall take into consideration the
> existing transportation facilities and the effect up-
> on them, the public need for the service the appli-
> cant proposes to render, the ability of the applicant
> efficiently to perform the service for which author-
> ity is requested, conditions of and effect upon the
> highways involved and the safety of the public us-
> ing such highways. No such certificate shall be is-
> sued unless and until the applicant has established
> to the satisfaction of the commission that there
> exists a public necessity for such additional serv-
> ice and that public convenience will be promoted
> thereby."

The Railway Express Agency is a corporation qualified to transact business in all states. It was organized by the principal railroads of the country to conduct the express business over their lines and lines of other carriers and to engage in a general transportation business. The Railway Express Agency, Inc. is engaged in rendering an express service by medium of rail transportation, such service performed in accordance with the tariffs and other rules or regulations filed with the Federal, State or foreign authorities. It deals in services and the most important factor in performing these services is transportation. The mode of transportation, in the instant case, it has used for the past fifty years has been rail transport. By these proceedings the Railway Express Agency, Inc. is not requesting any change in the authority to express any different types of merchandise but to substitute highway transportation for rail transportation due to the fact that rail transportation is no longer possible because of the fact that there are no trains operating in the

territory involved in these proceedings. The facts do not constitute an inauguration of a new service but a substitution of motor for rail transportation of an existing service. It may be expressed in another manner by saying that there is to be no change in the service but only in the method of rendering such service. According to Sec. 25 if this applicant had been operating its service previous to January 1, 1935 by rail and had substituted highway transportation for the rail service prior to January 1, 1935 it would have been granted a certificate of public convenience and necessity as a matter of right. However, in the instant case the applicant was not using motor transport before January 1, 1935 nor has it used such mode of transportation since 1935 so it is incumbent upon it to produce such substantial evidence upon which the Commission may base a finding that the public convenience and necessity require highway motor transportation. *Bangor and Aroostook Railroad Company, Re: Application to operate as a common carrier of freight and merchandise by motor vehicle*, 157 Me.    . The intervenors strongly urge that Sec. 25 does not apply under the circumstances of this case where the applicant was not itself the physical carrier and therefore Sec. 20 should govern. We cannot agree with this contention. Sec. 25 concerns itself with railroads, electric railways, *rail express* and water common carriers. Permission is given to apply to the Commission for "its approval of operation by motor vehicles over the highways by or *in connection with the service of such carriers,* where highway transportation has been substituted by or for such carrier prior to January 1, 1935, for transportation service previously performed by such carrier *or is to be substituted for transportation now performed by or for any such carrier."* (Emphasis supplied.) Railway Express, according to Sec. 25, is a common carrier. The Railway Express Agency, Inc. uses rail as a mode of transportation in performing its services also utilizes a fleet of motor trucks largely in terminal pickup,

delivery and transfer service and to a considerable extent in line-haul operations. Thus the service of the Railway Express Agency, Inc. as a common carrier is performed transportation-wise by either rail or highway motor transportation. The traffic handled by the Railway Express Agency, Inc. on the trains is express shipments which move under express tariffs and express billings. The substitution of motor transport for rail service would not involve any change in the traffic as it would move under the same tariffs and the same billing as formerly.

Sec. 25 was obviously enacted for the purpose of regulating highway transportation when motor vehicle transportation was required to be substituted for that of rail. There was no need of such an enactment where a common carrier sought to inaugurate a transportation service by motor vehicle as a previous enacted section (Sec. 20) provides the procedure in that case. Some two years after the enactment of Sec. 20 the Legislature passed an amendment to Chap. 48 (Sec. 25) which established certain procedures applicable to a particular class of common carriers, these classes being railroads, electric railways, railway express or water common carriers. These types of common carriers at the time of the passage of the amendment were recognized as those which under certain circumstances or conditions might find it necessary, in connection with the service they rendered, to substitute a different mode of transportation from that which they were then using. The Legislature saw fit to protect that carrier who was at the time of the enactment of the Legislature providing substituted highway transportation for rail transportation when it inserted a so-called, "grandfather clause" in the amendment. Those named carriers proving a substituted motor for rail transportation performed before January 1, 1935 would be granted a certificate of public convenience and necessity as a matter of right. What about the railroads, electric railways and, in the instant case, the railway express who desired to sub-

stitute motor vehicle transportation for rail transportation which had not been regularly performed prior to and since January 1, 1935? Did the Legislature intend that those seeking substitution after January 1, 1935 do so under Sec. 20? We do not think so. We are of the opinion, and so rule, that if the Commission finds from evidence of a substantial nature that public convenience and necessity require and permit such substitute operation then such a certificate shall issue.

The Railway Express Agency, Inc. transports goods and merchandise of every description, especially that type requiring great dispatch or careful handling. Articles and commodities of great value are part of normal express traffic, such as currency, negotiable securities, furs, jewelry, etc. There are at times government shipments moving under armed surveillance, all of which require extra special care and a specialized service. The express truck is driven by a trained employee who is familiar with express business and the rules and regulations and the necessary paper work in making reports and using forms prescribed by the company. If the operations were not carried on by the Railway Express Agency's truck equipment and employees, there could be delays in meeting trains which would result in late deliveries to consignees. If trains or other connecting agencies are late, an express operated truck will await their arrival which provides a flexibility of service which would not be available by an independent motor carrier operation. Independent truck carriers handling express traffic as an incidental phase of their business, with employees under the control and subject to the demands of their own business instead of devoting their sole interests to an express service, would not provide a satisfactory and efficient substitution.

The record discloses substantial evidence of public convenience and necessity. For instance, a lobster shipper con-

siders Railway Express Agency service the most dependable for his type of business; a mail order grocery and perishable food business contends that the service meets a requirement not provided by other carriers; and a large industrial plant using a perishable item in the manufacture of its product finds the type of service rendered by the Railway Express Agency a necessary adjunct to the operation of the business. These cited instances are typical of others of like nature presented to prove public convenience and necessity.

> "If a factual finding, basic of an order of the Commission, is supported by any substantial evidence, that is, by such evidence as, taken alone, would justify the inference of the fact, the finding is final. *Hamilton v. Caribou, etc., Company, 121 Me., 422, 424.* Here, as with a jury verdict, a mere difference of opinion between court and commission, in the deductions from the proof, or inferences to be drawn from the testimony, will not authorize the disturbance of a finding.

> "On the other hand, whether, on the record, any factual finding, underlying order and requirement, is warranted by law, is a question of law, reviewable on exceptions. *Hamilton v. Caribou, etc., Company,* supra." *Gilman, et al vs Somerset Farmers Co-Operative Telephone Company, et al, 129 Me. 243, at page 248.*

> "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co., et al vs National Labor Relations Board, et al, 305 U. S. 197, 229.*

See *Bangor and Aroostook Railroad Company, Re: Application to operate as a common carrier of freight and merchandise by motor vehicle, supra.*

The Railway Express Agency, Inc., by substituting the method of transportation, is not in any manner encroaching upon the rights of those carriers now serving the area. They suffer no prejudice by the substitution, either by loss of business or invasion of rights. The Railway Express Agency, Inc. should not be penalized because of the loss of an established mode of transportation resulting from circumstances over which it had no control, providing it can prove that public convenience and necessity, as well as public interest, require the continuance of the service by substituted motor vehicle transportation. The record discloses that it has satisfied the requirements of proving public convenience and necessity. The record also demonstrates the fact that the findings of the majority of the Commission are supported by substantial evidence.

There is no merit in intervenors' exceptions to the admission of Exhibits 8, 9 and 10.

*Exceptions overruled.*