POINT EXPRESS, *Inc.*

*v.*

PUBLIC SERVICE COMMISSION OF WEST VIRGINIA,
AND RAILWAY EXPRESS AGENCY, *Inc.*

(No. 12318)

Submitted May 26, 1964.          Decided July 7, 1964.

*Homer W. Hanna, Jr.,* for petitioner.

*Robert L. Hart, Jr.,* for Public Service Comm.

*Kay, Casto & Chaney, Vincent V. Chaney, Edward H. Tiley, Jr.,* for Ry. Exp. Agency.

BERRY, JUDGE:

This is an appeal by the Point Express, Inc., from final orders entered by the Public Service Commission of West Virginia, on October 2, 1963, and January 8, 1964, in M. C. Case No. 16954. The application for appeal was heard on March 3, 1964, after which the appeal was granted on March 16, 1964. It was placed on the docket of the April Special 1964 Term and submitted to this Court for decision on May 26, 1964, on arguments and briefs.

This case involves an application filed by the Railway Express Agency, Inc., with the Public Service Commission of West Virginia, for a certificate of convenience and necessity to operate motor vehicles in the transportation of "Commodities generally moving in express service Territory or routes: Over a regular route from applicant's express station in Huntington, Cabell County, West Virginia, via U.S. Route 60 and W. Va. State Route 10 to applicant's express station in Logan, Logan County, West Virginia, (serving the said two express stations and the express station at West Hamlin, Lincoln County) and return. (This motor carrier service will be in lieu of, and substituted for, applicant's present express service in which applicant presently uses a rail carrier for service between Huntington, West Hamlin and Logan)."

The petitioner, Point Express, Inc., protested this application before the Public Service Commission, and after hearing had thereon, the Commission entered an order on October 2, 1963, granting the application and issued a certificate to the Railway Express Agency for such service, with the limitation contained in the certificate that the holder of such certificate "* * * shall not serve intermediate points." A petition for reconsideration or recission of the order dated October 2, 1963, was filed by Point Express, Inc., and on January 8, 1964, the Commission entered an order denying the petition. It is for a review of these orders that the petition of the Point Express, Inc., for an appeal was granted.

It is the contention of the petitioner, Point Express, Inc., that the Commission erred: (1) When it stated in its order

dated October 2, 1963, granting the certificate of convenience and necessity, the following: "It is the view of the Commission that the application as filed covers all commodities moving in express service and is not intended to be limited to 'general commodities' as defined by this Commission.", because the rules adopted by the Commission and filed with the Secretary of State do not define "express service"; (2) in holding that the question of inadequacy of service of the protestant in this proceeding was immaterial; and, (3) in granting the certificate of public convenience and necessity, because there was no evidence offered by the applicant as to the need of the service by the public.

Only two witnesses appeared and testified at the hearing had before the Public Service Commission. The division supervisor for the Railway Express Agency testified in its behalf, and the executive vice-president and secretary of the Point Express, Inc., testified in its behalf. The respondent, Railway Express Agency, and its predecessors, have been engaged in the transportation of materials transported by express service over a period of many years, long before the petitioner ever engaged in the motor carrier business. The respondent is wholly owned by the railways in this country. It is engaged in a specialized service described in "Official Express Classification 36", which contains an itemized list of the rates, rules and regulations pertaining thereto, which was filed as an exhibit during the hearing of the Public Service Commission and made a part of the record in this case. It appears on the cover of such exhibit that it has been filed with the Public Service Commission of West Virginia and designated as respondent's tariff number 229. The respondent states that its application to transport commodities moving in express service is limited and confined to this tariff number 229, and that it covers only such items as it has heretofore been transporting in express service by the use of railway cars to and from the points set out in its application.

The reason for the filing of the application by the Railway Express Agency in this instance is because the C. & O. Railway discontinued the operation of trains numbered

5 and 6 by which the Railway Express Agency had been transporting commodities by express service between Huntington, Logan and West Hamlin. After these trains had been discontinued, the Railway Express Agency then used box cars, carried by freight trains, to transport commodities shipped by express, although only a small portion of the box cars was used, that is, less than carload lots, creating a delay of 24 hours for certain deliveries in the area in question, and 72 hours delay in other instances. It is the contention of the Railway Express Agency that this certificate of necessity and convenience is desired in order to provide better and more efficient service to its customers, and that this service can be provided more effectively by the use of motor trucks to replace railway transportation to the points in question.

It is the contention of the Point Express that it has daily service over the same route and has adequate equipment and personnel to handle such shipments. The certificate of convenience and necessity held by Point Express authorizes it to transport commodities generally by motor freight over this route and other routes in West Virginia, and it is not limited to just two or three points of delivery but may stop at any points on the route for receiving or delivering such commodities.

It is conceded that the Railway Express Agency handles articles under its rates, rules and regulations that Point Express will not, or is not sure it can, deliver, such as live animals, shipments requiring armed guards, items of great value and explosives. It is also conceded that if the Railway Express Agency handles only the same commodities as previously handled by them for shipment over the routes in question, using motor trucks instead of railway transportation, it would not affect the business of Point Express, because both the Railway Express Agency and the Point Express would be handling the same commodities they had heretofore handled.

It is admitted that if the certificate of convenience and necessity is denied to the Railway Express Agency, the Point Express will by virtue thereof obtain more business

than it now has; that is, it will profit by the discontinuance of the intrastate service furnished by the Railway Express Agency. Only five percent express service in the instant case is intrastate, and ninety-five percent is interstate and is governed by the Interstate Commerce Commission, which has already approved such change in the mode of service by the Railway Express Agency.

The record indicates that the Point Express believes that the certificate in question would allow the Railway Express Agency to expand its service and transport commodities from customers now served by the Point Express. Such is not the case. The only service authorized by the certificate of convenience and necessity by the Public Service Commission to the Railway Express Agency is the same service and transportation of the same articles heretofore transported by railway transportation, but now authorized to be transported by motor truck. In other words, the same service by transportation will be performed except in a different mode or manner and the commodities are limited to those moving in express service to the three points in question. The rates for such express service are different and the certificate confines or limits the commodities to be transported to those listed in the Official Express Classification 36, on file with the Public Service Commission of West Virginia as Railway Express Agency Tariff 229.

By virtue of Chapter 24A, Articles 1 and 2, as amended, of the Code of West Virginia, the Public Service Commission is given authority to regulate the transportation of all commodities in this state by common carriers, either by rail or motor vehicle, including express or forwarding agencies, to prevent unnecessary multiplication of service among carriers by motor vehicle, and to coordinate the service facilities and schedules of competing common carriers by motor vehicle or electric or steam railways. It also gives the Commission authority to prescribe rules and regulations for all such common carriers by general order, *or otherwise.*

If at any time the Railway Express Agency attempted to enlarge its service of transportation of commodities in any

manner other than that heretofore authorized by virtue of the certificate in question in this case, it could be prohibited and regulated by proper application to the Public Service Commission.

We will now discuss the first assignment of error to the effect that rules and regulations of the Public Service Commission filed with the Secretary of State do not define commodities moving in express service, therefore, the commission had no authority to issue a certificate of such service, and was in violation of the provisions of Code, 5-2-3, as amended, in effect after 1955 relating to filing of state agency rules with the Secretary of State, if applicable to this case. [Code, 5-2-3 was repealed by Chapter 29A, Code, effective July 1, 1964, and is now scattered through that Chapter, particularly in Code, 29A-1-1, Code, 29A-2-1, and Code, 29A-3-4. A new effective date for filing rules is established thereby.]

The rule in question, M. C. General Order No. 11, promulgated by the Public Service Commission and filed with the Secretary of State, not only has a broad description of "General Commodities", but also contains general descriptions of other commodities differentiated by reason of size, physical characteristics, special equipment required and special facilities necessitated. Many such terms have been used by the Public Service Commission in the past and never questioned in the issuance of certificates of convenience and necessity covering such articles as household goods, heavy equipment and low grade commodities. There is, therefore, much precedent for differentiating items transported according to their characteristics or method of handling, and Interstate Commerce Commission cases such as those hereinafter cited have uniformly treated "express service" as a unique service having special characteristics of care and speed, the meaning of which is common knowledge. We are of the opinion that the Public Service Commission used a proper term for the description of the limited service authorized in the instant case by the certificate of public convenience and necessity issued by it.

The second assignment of error, to the effect that the Commission erred in holding that the question of inadequate service of the protestant in this proceeding was immaterial and that the certificate issued was merely for the improvement of existing service, is the controlling issue in this case.

The application of the Railway Express Agency does not request authority to provide the same motor carrier service as that provided by the protestant Point Express, Inc. It is the intention of the Railway Express Agency in applying for the certificate in question to alleviate the delay of from 24 hours to 72 hours in delivery of express transportation from Huntington, West Hamlin and Logan, and return. The certificate requested is for limited service performed by the Railway Express Agency specified therein, and is in lieu of and substituted for the present express service furnished by rail between the same points.

The case at bar is controlled by the decision of this Court in the case of *Chesapeake & Ohio Railway Co.* v. *Public Service Commission,* 139 W. Va. 161, 172, 81 S. E. 2d 700, decided in 1953. It was stated in that case: " * * * the applicant seeks not authority for a new or extended service, but for a different method only of rendering a specialized and limited service it is already authorized and required to render, and which is rendered by no other carrier." This same proposition is before us in the instant case.

It is true that the *C. & O. Railway* case involved a railway attempting the substitution of motor truck transportation for rail transportation, but the principle involved in each case is the same. It was held in that case that the question of adequacy or inadequacy of existing common carrier service in the same field was not a material factual issue in determining the right of such applicant to have a certificate of necessity and convenience issued.

It might be well to state that the Interstate Commerce Commission has consistently granted authority applied for by the petitioner in this case for interstate shipments. I.C.C. Rep., R.E.A. Extension, *Durant-Kosciusko,* 34 M.C.C. 111; I.C.C. Rep., R.E.A. Extension, *Washington-Harrisburg,* 33 M.C.C. 671; I.C.C. Rep., R.E.A. Extension, *West Unity-*

*Middletown*, 31 M.C.C. 363. The Interstate Commerce Commission is not confined in its decisions by the provisions of statutes in most states requiring an applicant for such certificate to show that the service of others in the same field who have been granted certificates is inadequate and insufficient. The Virginia case of *Seaboard Air Line Railroad Company* v. *Commonwealth*, 193 Va. 799, 71 S.E. 2d 146, cited by the petitioner in its brief as authority for the refusal of the certificate involved herein, was referred to in the case of *Chesapeake & Ohio Railway Co.* v. *Public Service Commission, supra,* with the statement that the controlling facts were materially different in the two cases, which is, of course, doubly true in the case presented here. However, even if they were the same, this Court is still not inclined to follow the rule announced in the *Seaboard* case. It was also stated by this Court in the *C. & O.* case that it was interesting to note that both the Interstate Commerce Commission and the State of North Carolina had granted authority to *Seaboard* to operate a substituted motor service in interstate commerce and intrastate commerce in their jurisdiction, but that the same authority was refused by the Virginia Court. In this present case, if authority should be refused by West Virginia, it would result in the inconvenience of the Railway Express Agency having to turn five percent of its traffic along the Huntington-Logan route over to another shipper while having authority to handle the remainder itself.

The case of *Application of Railway Express Agency, Inc.,* 170 A. 2d 380, decided by the Supreme Court of Maine, is on all fours with the case at bar, and the certificate of convenience and necessity for such substituted service was granted to the Railway Express Agency. In that case, the Court stated:

> "The Railway Express Agency is a corporation qualified to transact business in all states. It was organized by the principal railroads of the country to conduct the express business over their lines and lines of other carriers and to engage in a general transportation business. The Railway Express Agency, Inc. is engaged in rendering an express service by medium of rail transportation, such

service performed in accordance with the tariffs and other rules or regulations filed with the Federal, State or foreign authorities. It deals in services, and the most important factor in performing these services is transportation. The mode of transportation, in the instant case, it has used for the past fifty years has been rail transport. By these proceedings the Railway Express Agency, Inc. is not requesting any change in the authority to express any different types of merchandise but to substitute highway transportation for rail transportation due to the fact that rail transportation is no longer possible because of the fact that there are no trains operating in the territory involved in these proceedings. The facts do not constitute an inauguration of a new service but a substitution of motor for rail transportation of an existing service. It may be expressed in another manner by saying that there is to be no change in the service but only in the method of rendering such service."

We feel that the reasoning of the above Maine case is fully applicable in West Virginia and clearly shows that Railway Express Agency here proposes a substitutionary service, not an enlarged one.

The case of *McKee* v. *Public Service Commission*, 124 W. Va. 10, 18 S.E. 2d 577, cited by the petitioner, holds only that common carriers over a route or routes are protected by the clause with regard to furnishing adequate service and that such protection is not afforded to carriers granted certificates to operate in territories only. Therefore, that case is not authority for the question involved in the case presented here.

It is true that the Railway Express Agency service in this case is operated over a specific route, but it is limited to certain points. This is a substituted service in lieu of one already furnished, and therefore it is not necessary to show that any service furnished by motor carriers in the same area is inadequate or affords them the opportunity to improve such service. *C. & O. Railway Company* v. *Public Service Commission, supra; Application of Railway Express Agency, Inc., supra.* In like manner, the case of *Charleston Transit Co.* v. *Public Service Commission, etc.*, 142 W. Va. 750, 98 S.E. 2d 437, is not applicable.

742

The third assignment of error asserted by the petitioner, that there was no evidence offered by the applicant as to the need of the service by the public, is not well taken, because the testimony of the district supervisor of Railway Express Agency, Inc., is uncontradicted in showing that Railway Express Agency, Inc., is at the present time providing service between the points in question as set out in the certificate, having done so for the past fifty years, and is supplying the needs of the public for such service, and that the reason for the request was to supply better and more efficient service to the public in the field in which they are engaged. The evidence also clearly indicates that in some instances it could not be furnished by the Point Express, Inc., because it was without authority to do so.

For the reasons set out herein, the final orders of the Public Service Commission of West Virginia granting a certificate of convenience and necessity to the Railway Express Agency for the transportation of commodities generally moving by express service between its express stations in Huntington, Logan and West Hamlin, West Virginia, in accordance with the Railway Express Tariff Number 229, heretofore filed with the Public Service Commission, limited and restricted thereto, which is in lieu of the same express service heretofore furnished by the Railway Express Agency by rail service over the Chesapeake & Ohio Railway between the same points, are affirmed.

*Affirmed.*