BELL LINES, *Inc.* AND POINT EXPRESS, *Inc.*

*v.*

PUBLIC SERVICE COMM. OF W. VA. AND

RAILWAY EXPRESS AGENCY, *Inc.*

(No. 12321)

Submitted May 26, 1964.       Decided July 7, 1964.

*Homer W. Hanna, Jr.,* for petitioners.

*John E. Lee,* for Public Service Comm.

*Kay, Casto & Chaney, Vincent V. Chaney, Edward H. Tiley,* for Ry. Exp. Agency.

BROWNING, JUDGE:

Upon application of Bell Lines, Inc., and Point Express, Inc., hereinafter referred to as appellants, this Court granted this appeal to review the action of the Public Service Commission of West Virginia in granting a certificate of convenience and necessity to Railway Express Agency, Inc., to operate as a common carrier by motor vehicle transporting commodities generally moving in express service over regular routes between various points in West Virginia in lieu of and as a substitute for the express service theretofore provided by rail.

The Public Service Commission, hereinafter referred to as Commission, granted temporary authority to so operate on January 22, 1963, which order also set the case for hearing and required notice of such to be published in newspapers of general circulation in the areas in which such points are situated.

At the hearings, as continued from time to time, appellants and seven other motor carriers appeared as protestants. Railway Express Agency, Inc., adduced the testimony of its division supervisor, who, in substance, testified that: Railway Express has approximately one hundred thirty offices in West Virginia and for a number of years has provided express service for goods and merchandise of every description in intrastate and interstate commerce, including that requiring special care, facilities, protection and handling; since 1929, such service has been provided by rail service through the use of joint freight-express way cars; the Baltimore & Ohio Railway, by letter of December 17, 1962, notified Railway Express that effective January 15, 1963, the use of joint freight-express way cars would be discontinued and that Railway Express would thereafter have to provide its own service to those points previously served by way cars; the proposed motor carrier service would be operated on regular schedules to coordinate with rail and air service at various points; and, due to the limitations of the certificates of existing carriers and their inability to handle all of the special classes of goods moving in express traffic, it is desirable that such service continue to be provided by Railway Express.

The witness further testified that the proposed truck routes would not alter the competitive position between Railway Express and protestants, but would merely substitute motor truck service for the former rail service performed by the Baltimore & Ohio Railroad and that the same rates would apply. On cross-examination, the witness admitted that in a few instances, traffic between points on the proposed truck routes, which formerly required shipment out of the state to a rail junction and then back into the state, requiring three or four days for delivery, could now be delivered in a matter of hours. No other testimony was offered by Railway Express.

Protestants all testified that there was no necessity for additional motor carrier service in the areas covered by the application and that, if any additional service were required, they could provide such service. Protestants also contended that the proposed service would be more competitive from the standpoint of time, that is, speedier deliveries than that formerly provided by rail, and that the proposed service was thus, in effect, a new service, rather than a substitute service.

The Commission found that the protestants are not in a position to adequately and efficiently render the overall service which Railway Express has been performing and which it proposes to continue to perform by truck and that Railway Express is entitled to a certificate of convenience and necessity to operate by truck, as a substitute for the rail service no longer available to it, between the points involved, including the town of Glenville, which had formerly been served by carriers under private contract with Railway Express, from the nearest railhead. The Commission then granted the authority sought subject to the restrictions that: in its operations over regular routes no intermediate points would be served except those expressly stated in the certificate; all shipments, to the extent practicable, shall be governed by the tariffs relating to rail shipments; and, Railway Express shall operate over regular routes, on regular schedules only, such schedules to be filed with, and subject to the approval of, the Commission.

This is a companion case to *Point Express, Inc., et al.* v. *Public Service Commission*, 148 W. Va. 732, 137 S. E. 2d 212, decided this day, and the issues herein are controlled by that decision. Reference is made to the opinion of that case for the reasons for the decisions in both cases. However, the writer of this opinion is not in accord with the other members of this Court in the decision of either of these cases for the reasons stated in the dissenting opinion in *C. & O. Ry.* v. *P. S. C.*, 139 W. Va. 161, 81 S. E. 2d 700, in which Judge Riley, then a member of this Court, joined. One of the two grounds upon which the *C. & O.* decision was based was the provisions of Code, 31-2-1, granting broad transportation privileges to railroad companies. There is no comparable legislation relating to railway express companies. The Court is unanimous in the view that neither of these cases can be distinguished upon the facts from the other ground upon which the decision of the *C. & O.* case was predicated as is so ably stated in the opinion of the *Point Express* case.

The writer bows reluctantly to the principle of *stare decisis*. The final order of the Public Service Commission is affirmed.

*Affirmed.*